

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00388-CV

**ESTATE OF** Paul Edward **CHECK**, Deceased

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2012-PC-2681
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  July 9, 2014

AFFIRMED

Appellee Rachelle Marie Powers was appointed Independent Executor of the Estate of Paul

Edward Check ("Paul") pursuant to the decedent's will.   Appellant Patrick A. Check, the

decedent's twin brother, filed a will contest objecting to the probate of the will.   In response to the

will contest, and certain actions allegedly taken by Check, Powers filed, among other things, a

counterclaim alleging defamation.   Check filed a motion to dismiss the counterclaim pursuant to

the Texas Citizens' Participation Act "(the Act"), also known as the Anti-SLAPP statute.[1]   The

motion to dismiss was overruled by operation of law because the probate court did not rule on it

---

[1] "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation."  *Rehak Creative Servs., Inc. v. Witt*,
404 S.W.3d 716, 719 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

within the time prescribed by the Act.[2]  On appeal, Check contends the trial court erred by failing to grant his motion to dismiss.  We affirm the probate court's judgment.

## BACKGROUND

A detailed rendition of the facts is unnecessary to our disposition of the appeal.  Accordingly, we provide only those background and procedural facts necessary for context and our disposition.

After an argument with his brother concerning Powers's alleged influence over Paul and his finances, Paul changed his will.  Under the terms of the will, Powers was named executor and sole beneficiary; Check and his wife were disinherited.  After Paul died, Powers filed the will for probate and it was admitted.  The will specifically stated, "I have deliberately made no provisions for the benefit of my brother Patrick Allen Check and his wife Carla A. Check."  Check filed a will contest, asserting Powers unduly influenced Paul while he lacked mental capacity.  He claimed Powers "exerted dominion and control over Paul . . . in order to secure access to Paul's funds during his lifetime and upon his death," and "took actions to prevent [Check] from having access to Paul."  Check claimed Powers had and would "continue to take actions to embezzle and pilfer [the] estate . . . ."  He alleged Powers committed fraud, conversion, and breach of fiduciary duty.

In response, Powers filed an answer and counterclaims.  In her counterclaims, Powers alleged defamation and bad faith.  Powers referenced complaints made by Check to her employer, the SAPD, and his report to Adult Protective Services.  She also alleged Check contacted co-workers and others, making defamatory statements about her with regard to her relationship with Paul.  Powers asserted Check persisted even after the SAPD determined his claims were "unfounded."

---

[2] The probate court recognized the motion was denied by operation of law, rendering an order on July 18, 2013, in which the court stated the motion to dismiss was denied by operation of law.

Several months after filing the will contest, Check nonsuited the action. Thereafter, in March, he filed a motion to dismiss Powers's counterclaims pursuant to the Act. Powers filed a response and a motion for sanctions. The probate court held a hearing on Check's motion to dismiss and Powers's motion for sanctions. However, the probate court did not rule on the motion to dismiss within thirty days of the date of the hearing. Accordingly, the motion to dismiss was overruled by operation of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.005(a), 27.008(a) (West Supp. 2013).[3] The probate court denied the motion for sanctions. Check thereafter perfected this appeal.

## ANALYSIS

In a single issue, Check contends the probate court erred in failing to grant his motion to dismiss. He argues the probate court should have granted his motion to dismiss Powers's counterclaims because: (1) the claims were based on, related to, and in response to Check's exercise of free speech and right to petition; (2) there is no evidence to support any elements of the counterclaims asserted by Powers; and (3) the motion to dismiss was timely. Because we find the motion to dismiss was untimely, we hold the probate court did not err in failing to grant Check's motion to dismiss.

This appeal focuses on a recently enacted statute called the Texas Citizens Participation Act, which is codified in Chapter 27 of the Texas Civil Practice and Remedies Code. *See id.* §§ 27.001–.011. The issue regarding the timeliness of Check's motion to dismiss implicates section 27.003(b) of the Act, which states that "[a] motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action." *Id.* §§ 27.003(b). Section 27.001(6) defines "legal action" as "a lawsuit, cause of action, petition,

---

[3] After the statutory deadline passed, the probate court rendered an order denying Check's motion to dismiss.

complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). Powers contends Check's motion was not filed within the deadline set forth in section 27.003(b), thereby waiving his right to a dismissal. Check, however, contends his motion to dismiss was timely. Therefore, according to Check, the timeliness of his motion to dismiss did not provide a basis upon which the probate court could refuse to grant his motion.

Resolving the issue of the timeliness of Check's motion to dismiss requires us to construe the relevant provisions of the Act — sections 27.001(6) and 27.003(b). Issues of statutory construction are reviewed de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011); *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *Molinet*, 356 S.W.3d at 411; TEX. GOV'T CODE ANN. § 312.005 (West 2013). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet*, 356 S.W.3d at 411; *see Texas Lottery Comm'n*, 325 S.W.3d at 635.

The purpose of the Act is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. The Act provides a means for a defendant, *early in the litigation*, to seek dismissal of certain claims, including defamation claims. *Id.* § 27.003(b).

Check contends his motion was timely because it was filed March 20, 2013, within sixty days of Powers's January 22, 2013 amended petition, the first petition "served" upon Check. Powers counters that her original petition was served on Check by facsimile through his original

counsel on September 28, 2012, rendering Check's motion to dismiss untimely. *Id.* Check asserts there was no evidence of service of the original counterclaim because there was no certificate of service attached to the original counterclaim that appears in the clerk's record.

The plain language of section 27.003 establishes that a motion to dismiss under the Act must be filed sixty days from the date of service of the legal action. The question here concerns whether Powers established service of the original petition so as to render Check's motion untimely. We hold that she has.

Admittedly, Powers's original counterclaim that was filed in the clerk's office did not contain a certificate of service. In the absence of a certificate of service or some other evidence, a court cannot presume notice was received. *See Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005). Check, relying on *Mathis*, presumes that because the document contained within the clerk's record does not include the certificate of service, this ends the inquiry. We disagree and do not believe *Mathis* mandates such a holding.

In *Mathis*, the issue was whether the defendant established her nonappearance at trial was neither intentional nor the result of conscious indifference so as to allow her to set aside a default judgment. *Id.* at 744. The defendant filed a sworn motion for new trial in which she asserted she did not receive notice of the trial setting. *Id.* At the hearing, counsel for the plaintiff testified he sent the notice; the defendant testified she did not receive it. *Id.* at 745. There was no other evidence submitted at the hearing. *See id.*

Upon review, the supreme court held the defendant established her nonappearance was neither intentional nor the result of conscious indifference because there was no evidence of service of the notice of trial setting other than counsel's "oral assurance." *Id.* at 745–46. In reaching its decision, the court noted that unlike service of citation, Rule 21a of the Texas Rules of Civil Procedure allows service by anyone competent to testify, and when a party or the attorney of record

includes a certificate of service on the filed instrument, this constitutes prima facie evidence of service. *Id.* at 745. In addition to a certificate of service, an officer's return or an affidavit may also be prima facie evidence of service, resulting in a presumption of service. *Id.* In *Mathis*, however, there was no certificate of service, no return, and no affidavit certifying service. *Id.* Indeed, there was nothing more than "the oral assurance of counsel." *Id.* Accordingly, there was no presumption of service and therefore no evidence the defendant received the notice, i.e., was served. *Id.* The court held that testimony by the plaintiff's counsel that notice was sent did not established notice was received. *Id.* Even if the trial court did not believe the defendant's claim that she never received service, the oral assurance of the defendant's counsel would not provide "affirmative evidence that service occurred." *Id.* Finally, the court held that because "[n]o other alternatives established service," the trial court erred in denying the defendant's motion for new trial. *Id.* at 745–46.

Although in this case there was no certificate of service on the counterclaim filed with the clerk's office, no officer's return, and no affidavit, there was evidence presented to the probate court to establish service of the original counterclaim on September 28, 2012. After the hearing on Check's motion to dismiss, Check filed a "Post-Hearing Brief" in support of his motion to dismiss. In that document, Check argued, as he does here, that the motion to dismiss was timely because it was filed within sixty days of the first amended counterclaim, the first counterclaim he contends he was served with. Powers filed a response to this document, contesting Check's claim of lack of service. In support of her response, Powers attached documents to establish service of the original counterclaim: (1) a facsimile transmission cover sheet dated September 28, 2012, over a copy of a document entitled "Executor's Answer, Counter Claims and Special Exceptions to Contest of Will," which included a certificate of service stating service by facsimile on September 28, 2012; and (2) a facsimile confirmation report dated September 28, 2012, showing seventeen

pages were successfully faxed to Check's attorney. These documents are evidence of service of the counterclaim upon Check through his counsel of record. It would appear that the document filed with the clerk's office failed to include the certificate of service, which according to Check deprived Powers of the Rule 21a presumption. *See id.* at 745. However, *Mathis* did not hold that a certificate of service, return of service, or affidavit were the only means by which a presumption of service would arise. *See id.* To the contrary, the court in *Mathis* specifically stated that not only was there a lack of a certificate, return, or affidavit, there was a complete absence of any evidence, other than counsel's bare assertion — "[n]o other alternatives established service" — and it was this complete absence of evidence that precluded a presumption of service. *See id.*

Here, there is evidence beyond Powers's counsel's "oral assertion" at the hearing on the motion to dismiss. The probate court was presented with evidence attached to a post-hearing pleading that established service on Check's former counsel by facsimile of the original counterclaim on September 28, 2012. Powers provided a copy of the entire original counterclaim, including the certificate of service missing from the copy in the record, the facsimile coversheet, and confirmation and transmission reports showing the original counterclaim was sent to Check's counsel on September 28, 2012. We hold this was adequate to establish a presumption that the original counterclaim was indeed served upon Check through his attorney. Accordingly, we hold the burden shifted to Check to prove he was not served.

Check seems to suggest that in the absence of a certificate of service, there can be no prima facie proof of service, and therefore no presumption. However, neither *Mathis* — as explained above — nor the other case relied upon by Check — *In re E.A.*, 287 S.W.3d 1 (Tex. 2009) — stands for such a proposition. As we explained above with regard to *Mathis*, the supreme court made it clear that if there was no evidence beyond counsel's oral assertion, no presumption of service arose. *See id.* However, *Mathis* does not hold that a certificate of service alone may be

used to create the presumption. *See id.* Likewise, in the other case relied upon by Check, the supreme court did not hold that only a certificate of service creates a presumption of service. See *E.A.*, 287 S.W.3d at 5.

In *E.A.*, the supreme court held that presumption of service of an amended petition was "negated by the amended petition's return as unclaimed." *Id.* The court held that a certificate of service creates a presumption of service. *Id.* However, just as in *Mathis*, the court did not hold a certificate of service is the only evidence that might give rise to such a presumption. *See id.* There was simply no discussion of other evidence that might have given rise to a presumption of service. *See id.*

As stated above, once Powers was imbued with the presumption of service, Check was required to rebut the presumption with an offer of proof negating service. Check submitted an affidavit from his former counsel — the person to whom the facsimile, which included the original counterclaim, was transmitted. In the affidavit, counsel avers Powers "never served, delivered to or provided me a copy of" the original counterclaim filed with the clerk on September 28, 2012. He stated he was unaware such a document was filed until he was so informed by Check's current counsel on May 9, 2013. We hold this verified evidence is sufficient to overcome the presumption of service created by the evidence produced by Powers.

In *Wembley Inv. Co. v. Herrera*, the supreme court stated that although a presumption of service had arisen, the presumption is "not 'evidence' and it vanishes when opposing evidence is introduced that the [document] was not received." 11 S.W.3d 924, 927 (Tex. 1999) (quoting *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987)). Opposing evidence sufficient to overcome the presumption includes an affidavit from counsel averring that he never received the document in question. *Herrera*, 11 S.W.3d at 927.

This, however, does not end the inquiry. Check seems to assume that once he overcame the presumption by virtue of his former counsel's affidavit, an absence of service was conclusively established. We disagree.

A presumption is nothing more than a rule for the guidance of the trial court in locating the burden of production at a particular time. *Texas A & M Univ. v. Chambers*, 31 S.W.3d 780, 783–84 (Tex. App.—Austin 2000, pet. denied). A presumption shifts the burden of production to the party against whom it operates. *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993). Once evidence contradicting the presumption is produced, the presumption merely disappears and cannot be treated as evidence. *Id.* However, after the presumption is neutralized, the facts giving rise to the presumption do not vanish. *See Estate of Glover*, 744 S.W.2d 197, 200 (Tex. App.—Amarillo 1987), *writ denied*, 744 S.W.2d 939 (Tex. 1988). Rather, they remain part of the evidence to be considered by the trier of fact. *Id.*

For example, in whistleblower cases, a statutory presumption of retaliation relieves the plaintiff of the initial burden to prove that she was terminated for reporting allegedly illegal activities. *Chambers*, 31 S.W.3d 780, 784. However, the defendant can overcome the presumption by disclosing facts sufficient to support a finding of non-retaliation. *Id.* If the defendant is successful, the case proceeds as if no presumption ever existed. *Id.* The defendant's ability to overcome the presumption does not conclusively establish non-retaliation, but merely requires the plaintiff to establish she was terminated in retaliation for being a whistleblower. *Id.*

Similarly, in *Balawajder v. Tex. Dep't of Criminal Justice, Institutional Div.*, the court, quoting the supreme court, held that a presumption is nothing more than a rule of law requiring a fact finder to reach a certain conclusion in the absence of evidence to the contrary. 217 S.W.3d 20, 27 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting *Temple Indep. Sch. Dist. v. English*, 896 S.W.2d 167, 169 (Tex. 1995)). When evidence to the contrary is introduced, the

presumption vanishes. *Id.* The court did not hold that overcoming the presumption conclusively establishes the matter. *See id.* In the summary judgment context, once a presumption is rebutted by some evidence, the presumption is neutralized and the standard summary judgment burden governs. *See id.* at 28.

Here, once Check overcame the presumption of service, the presumption vanished. However, the absence of the presumption did not conclusively establish a lack of service of the original counterclaim, nor did Powers's evidence in support of service vanish. Rather, it remained part of the evidence to be considered by the probate court with regard to whether the motion to dismiss was timely filed. *See Glover*, 744 S.W.2d at 200.

Powers provided the probate court with a copy of the entire original counterclaim, including the certificate of service missing from the copy in the record, the facsimile coversheet and confirmation and transmission reports showing the original counterclaim was sent to Check's counsel on September 28, 2012, to support Powers's assertion that Check was served with the original counterclaim. Check merely provided an affidavit from his former counsel denying receipt of the original counterclaim.

Given the evidence, we cannot say the probate court erred in failing to grant Check's motion to dismiss — it would not have been unreasonable for the probate court to have determined, based on this evidence, that the original counterclaim was, in fact, served upon Check on September 28, 2012. If so served, Check was statutorily required to file his motion to dismiss on or before November 27, 2012 — sixty days from the date of service of the original counterclaim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(b).

Check contends, in a footnote, that even if this court determines his deadline for filing the motion to dismiss was triggered by service of the original counterclaim on September 28, 2012, the probate court had discretion, for good cause shown, to extend the deadline for filing the motion

to dismiss. *See id.* Admittedly, the statute provides for an extension. *Id.* It appears, however, that although Check presented this possibility to the probate court, the probate court never ruled on the request. The Act provides that a motion to dismiss is overruled by operation of law if not ruled upon within thirty days after the date of the hearing on the motion. *Id.* §§ 27.005(a), 27.008(a). There is, however, no like provision with regard to a motion to extend time to file a motion to dismiss. Accordingly, we hold that without a ruling on the request to extend time to file the motion, nothing is preserved for our review. *See* Tex. R. App. P. 33.1(a).

Check argues in the alternative that if he was served with the original counterclaim on September 28, 2012, his motion to dismiss is still timely because Powers filed an amended counterclaim in January 2013, and he filed his motion within sixty days of the date of the amended petition, which he contends is a "legal action" under the Act. In support of his position, Check relies upon section 27.002(6) of the Act, defining "legal action." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6).

Section 27.001(6) defines a "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, counterclaim or any other judicial pleading or filing that request legal or equitable relief." Check contends that because the amended counterclaim filed in January was a "judicial pleading or filing requesting legal or equitable relief," his sixty-day deadline for filing the motion to dismiss ran from the date of service of that document. We disagree. Although the plain language of section 27.003(b), coupled with the definition of "legal action," might seem to support Check's expansive interpretation of section 27.001(6), we hold such an interpretation would lead to absurd results not intended by the Legislature. *See Molinet*, 356 S.W.3d at 411; *Texas Lottery Comm'n*, 325 S.W.3d at 635.

Taking Check's interpretation to its logical conclusion, once a "legal action" is filed, a party's deadline for filing a motion to dismiss would invariably be extended by the filing of *any*

substantive pleading relating to the Act, not just amended petitions or counterclaims. There are numerous substantive "pleadings" filed during the course of litigation, e.g., motions for sanctions, motions for summary judgment. To imply the filing of these pleadings, which do in fact seek legal or equitable relief, would reset the deadline for a motion to dismiss under section 27.003(b) is irrational and at odds with one of the purposes of the Act, which is to allow a defendant *early in the lawsuit* to dismiss claims that seek to inhibit a defendant's constitutional rights to petition, speak freely, associate freely, and participate in government as permitted by law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *see also Pickens v. Cordia*, No. 05-13-00780-CV, 2014 WL 2134540, at *2 (Tex. App.—Dallas May 22, no pet. h.) (noting Act provides means for *expedited* dismissal of unmeritiorious suit); *Summersett v. Jaiyeola*, No. 13-12-00442-CV, 2013 WL 3757208, at *1 (Tex. App.—Corpus Christi July 18, 2013, pet. denied) (noting Act provides for *early* dismiss of legal actions).

Check's interpretation would likewise allow the sixty-day deadline for filing a motion to dismiss to reset each time a party amended a petition or counterclaim, even if the amended document did not add new claims or parties. This would likewise defeat the Act's purpose of dismissing unmeritorious suits based on or related to the exercise of free speech early in the litigation or in an expeditious manner. *See id.* For example, under Check's interpretation an amended petition or counterclaim filed seven days before trial, as permitted by Rule 63 of the Texas Rules of Civil Procedure — even if it did not add new claims or parties — would renew the sixty-day deadline in section 27.003(b). *See* TEX. R. CIV. P. 63 (stating party is permitted to file amended pleadings without leave of court up to seven days before trial unless the trial court has set out a scheduling order); *First State Bank of Mesquite v. Bellinger & Dewolf, LLP*, 342 S.W.3d 142, 145–46 (Tex. App.—Dallas 2011, no pet.) (same). This would negate the early dismissal envisioned by the Act.

In support of his contention that Powers's amended counterclaim reset the sixty-day deadline, Check relies on *Ward v. Better Bus. Bureau of Metro. Dallas, Inc.*, 401 S.W.3d 440 (Tex. App.—Dallas 2013, pet. denied). However, rather than supporting Check's position, Ward actually undermines it.

In *Ward*, a law firm filed suit in 2011 against the local Better Business Bureau ("BBB") alleging defamation and negligence. *Id.* at 442. In 2012, an amended petition was filed. *Id.* In the amended petition, an attorney in the firm was added as a plaintiff. *Id.* The BBB filed a motion to dismiss the individual attorney's claims pursuant to section 27.003(a) within sixty days of the date of the amended petition, which added the attorney as an individual defendant. *Id.* at 442–43. The individual attorney claimed the motion to dismiss was untimely because it was not filed within sixty days of the date of service of the original petition filed by the firm. *Id.* at 443.

On appeal, the Dallas court disagreed, holding the Act, specifically the definition of "legal action," evinced an intent to treat any claim by any party on an individual and separate basis. *Id.* Thus, when the attorney served the BBB with an amended petition asserting *new*, *individual claims*, the deadline for filing a motion to dismiss as to those claims ran from the date the amended petition was served. *Id.* In other words, because the plaintiff had added new claims, a new deadline was mandated. *See id.*

Extrapolating from *Ward*, in the absence of new parties or claims, the deadline for filing a motion to dismiss would run from the date of service of the original "legal action." *See id.* Here, when Powers amended her counterclaim, she did not add new parties or claims. Thus, there was neither a basis nor a compelling reason to reset the original sixty-day deadline. This interpretation comports with the Act's intent that suits under the Act be dismissed, if at all, early in the litigation. Our interpretation does not lead to absurd results, does not unduly restrict the rights of either the plaintiff or the defendant, and preserves the sixty-day deadline mandated by the Legislature.

Accordingly, we hold Check's motion to dismiss was untimely. In light of the untimeliness of the motion, we hold the probate court did not err in refusing to grant it. In light of our decision that the motion was untimely — providing a basis for the trial court's refusal to grant the motion — we need not address Check's remaining arguments with regard to the motion to dismiss.

## CONCLUSION

Based on the foregoing, we overrule Check's issue and affirm the probate court's judgment.

Marialyn Barnard, Justice