**James W. PAULSEN, Appellant**

**v.**

**Ellen A. YARRELL, Appellee**

**NO. 01-16-00061-CV**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued October 12, 2017

Rehearing Denied November 21, 2017

Robin Russell, ANDREWS KURTH LLP, 600 Travis, Suite 4200, Houston, TX 77002, for Appellant.

Gregg S. Weinberg, Frank O. Carroll III, Mia B. Lorick, ROBERTS MARKEL WEINBERG, BUTLER HAILEY PC, 2800 Post Oak Blvd, 57th Floor, Houston, TX 77056, for Appellee.

Panel consists of Justices Massengale and Brown. See Tex. R. App. P. 49.3.

The en banc court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Lloyd, and Caughey.

## OPINION *

Michael Massengale, Justice

This is an appeal from a take-nothing final summary judgment rendered in favor of appellee Ellen A. Yarrell on appellant James W. Paulsen's defamation claims. Paulsen challenges the trial court's denial of a motion to dismiss, which attempted to invoke the Texas Citizens Participation Act. See Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. Paulsen also argues that summary judgment was improper because Yarrell's statements were not protected from a claim of defamation as statements of opinion or under the litigation privilege.

We affirm.

---

* Appellant James W. Paulsen filed a motion for rehearing and a motion for en banc reconsideration of our May 25, 2017 opinion. When this appeal was originally decided, the panel consisted of Justices Massengale, Brown, and Huddle. Justice Huddle left the court while Paulsen's motion for rehearing was pending. The panel, now consisting of Justices Massengale and Brown, denies the motion for rehearing. See Tex. R. App. P. 49.3. The panel

## Background

Attorney Ellen A. Yarrell represented Marvin McMurrey, III in a custody dispute regarding his twin children, who were conceived through "assisted reproductive technology" with his sperm and "an unknown donor's eggs," which were implanted in a female friend who gave birth to the children. See In re M.M.M., 428 S.W.3d 389, 392 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). McMurrey initiated litigation by seeking a declaratory judgment that he was the children's father, and that the woman who carried and gave birth to the children had no parental relationship to them or any standing to pursue parental rights because "she was solely a 'surrogate or gestational carrier.'" Id.

James W. Paulsen, a law professor at South Texas College of Law, was asked by local media to comment on the case. He reviewed publicly available information in the case file and observed a hearing. After the hearing, he wrote a letter to the trial court judge. The letter criticized legal decisions made in pursuit of the claim on behalf of McMurrey as well as rulings made by the trial judge. Throughout the letter, Paulsen referred to McMurrey by name and attributed to him actions taken on his behalf by Yarrell. For example, Paulsen argued that McMurrey improperly had sought a declaratory judgment instead of following the procedures in the Family Code for determination of parentage.

---

withdraws the opinion, vacates the judgment of May 25, 2017, and issues this opinion and a related judgment in their stead. The disposition remains the same.

The en banc court, consisting of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Lloyd, and Caughey, denies the motion for en banc reconsideration.

Paulsen contended this was a procedural mistake which deprived the court of jurisdiction. He asserted that McMurrey had "induced" the trial court "to violate" the mother's "constitutionally protected rights" and to rule "contrary to the best interests of the children." He referred to the proceedings in the trial court as "shabby" and a "miscarriage of justice," and he stated that the court had been "bamboozled." Finally Paulsen accused McMurrey of committing "egregious misconduct" in several different ways before and after the birth of the children.

Yarrell responded by emailing Paulsen, stating, "I cannot begin to tell you how upset I am that you have submitted an unsolicited document to the court for review. It is highly inappropriate." Paulsen replied:

> I am truly sorry that I have caused you distress. However, I do not understand what you think is inappropriate about my submission. Amicus curiae briefs have been a standard part of legal practice for centuries. More often than not, these briefs are not solicited by the court. I thought you might welcome the opportunity to discuss a serious jurisdictional issue now, rather than have it come up on appeal some months down the road, after everyone has wasted a whole lot more time and money.
>
> I have taken the liberty of copying [the mother's] counsel on this email response because I am sure you did not intentionally exclude him from a substantive communication you already have shared with the amicus attorney for the children.

Yarrell responded by writing, "This is not an appellate issue. I will research what avenues of recourse I may have on behalf of my client in this matter."

Days later, Paulsen sent another letter to the trial court judge asserting that after he "submitted an amicus curiae letter brief," Yarrell became "outraged," "castigat[ed]" him in an email, and "vaguely threaten[ed] some sort of legal action." He argued that "unlike some pious protestations heard recently in this courtroom," he believed that his "earlier submission" served "the best interests of two infants now in the care of a legal stranger" due to the court's "void order." Conceding that he "unknowingly may have violated some procedural or ethical rule," Paulsen stated that he would attend the next hearing and voluntarily submit to the jurisdiction of the court should Yarrell move for sanctions.

The following day, Yarrell sent a letter to Dean Donald J. Guter, the president and dean of South Texas College of Law, informing him that Paulsen had sent two letters to the court on the school's letterhead. Yarrell's letter stated:

> Enclosed please find two pieces of correspondence recently sent by Professor James W. Paulsen (State Bar of Texas Number 15643600) under South Texas College of Law letterhead to Judge Bonnie Crane Hellums of the 247th Judicial District Court, Harris County Texas.
>
> While the professor states that he submits the brief "as an individual, not as a representative of the South Texas College of Law," both letters are on the institution's letterhead and Professor Paulsen signs each letter as "Professor of Law."
>
> Professor Paulsen's correspondence was not requested by the Court or by any party in this matter and constitutes improper attempts to influence a tribunal. Further, Professor Paulsen employs unprofessional, unduly casual and contemptuous language throughout his unsolicited opinions to the Court.
>
> Professor Paulsen's interference with this most serious legal matter constitutes a grave breach of legal ethics and

any and all such correspondence from Professor Paulsen should cease immediately.

While the professor is certainly entitled to his opinions, his conduct invites the Judge to violate Canon 2(B) of the Code of Judicial Conduct. If Judge Hellums solicited Professor Paulsen's advice she would have been required to provide notice to all attorneys in advance pursuant to Canon 3(B)(8)(c) of the Code of Judicial Conduct.

We are researching what legal options we may have to exercise on behalf of our client regarding Professor Paulsen's inappropriate conduct, including what liability South Texas College of Law may carry; we are also researching if Professor Paulsen's correspondence constitutes a violation of Texas Disciplinary Rules of Professional Conduct 3.05.

It is our sincere hope that South Texas College of Law will sanction Professor Paulsen. Please contact our office if you have any questions.

The letter was signed by Yarrell and copied by email to McMurrey and to Professor T. Gerald Treece, the Vice President, Associate Dean, and Special Counsel to the President of the law school, and copied by fax to Michelle Jordan, Attorney Liaison for the State Bar of Texas Office of the Chief Disciplinary Counsel.

The cover sheet that accompanied the fax to the State Bar referenced the pending child custody case and included a brief message to Jordan, which said:

Enclosed please find correspondence that is being hand-delivered to the President and Dean of South Texas College of Law from Ellen A. Yarrell this morning regarding recent conduct of Professor James W. Paulsen (State Bar of Texas Number 15643600).

If you have any questions or if I can be of any assistance, please do not hesitate to contact our office.

A copy of the fax was emailed to McMurrey. About three weeks later, this transmission was returned to Yarrell with a grievance form. Yarrell did not file a grievance.

Paulsen later emailed Yarrell, informing her that he intended to sue McMurrey for tortious interference with a contract and for defamation per se based on the letters that were sent to Dean Guter and to the State Bar. His email to Yarrell stated:

Ms. Yarrell:

I was absent from a good bit of today's hearing while arranging the filing of the intervention. I understand that while I was gone you made some comment to the effect that you or Mr. McMurrey had decided not to pursue a State Bar grievance.

If this indeed was the gist of remarks you made in open court, simple courtesy requires that I provide some information that might cause you to reconsider your decision. Since the matter apparently now has been discussed in open court, before an audience of substantial size, I am copying all counsel.

I have engaged an attorney. I expect that attorney will file a lawsuit against Mr. McMurrey sometime during the next couple of weeks. The causes of action most likely will be tortious interference with contract and defamation per se. Actual damages will be presumed in the defamation action.

Once suit is filed, Mr. McMurrey must decide whether he will concede liability or try to demonstrate the truth of the accusations he/you have made. No matter what you represented to the Court, I expect you have done ... sufficient research by now to realize you don't have a legal leg to stand on. I have violated

neither the letter nor the spirit of any Texas ethics rule. To the contrary, I have acted in accord with the highest standards of the profession.

If you/Mr. McMurrey still believe there is any shred of substance to your accusations, or even if you just think your best option is to brazen it out, you might be wise to reconsider your decision not to file a grievance. You have an ethical obligation to report my violations of ethics rules to the State Bar. You will be required to substantiate your accusations at trial in any event, at least if you want to put up some defense in the defamation action. Contrariwise, failure to follow through on your ethics complaint will send a very clear message to the fact-finder.

On the other hand, perhaps you ... have figured out by now that I have acted ethically, and that you/Mr. McMurrey have acted very badly. If so, perhaps you should consider the possibility of mitigating damages—specifically, by formally and unambiguously retracting all accusations and tendering a full apology in writing. In that event, this matter might be resolved by a suitable donation to a charity of my choice. This offer is retracted once suit is filed.

Several weeks ago, I asked you to clarify whether your communications to my employer and the State Bar were on behalf of your client (as your letter intimated) or on your own hook. You have not done so. Accordingly, I'd appreciate it if you could let me know in writing, promptly, whether you are authorized to accept service on behalf of your client.

Thank you for your attention to this communication.

Jim Paulsen

Yarrell responded by email. In relevant part, Yarrell's response said:

I received your email stating that you planned to sue either me or my client, or both. Before you venture into expending precious time and resources, might I suggest that you review my letter which was sent to STCL and copied to the State Bar. In no way do I state that you "have violated" any ethical rules. It states that options are being considered. My client is not involved in the matter, except to be informed of the letters.

The State Bar did contact me and I explained that there would be no further action needed on the matter. You may verify this by a telephone call. This was several weeks ago prior to my vacation. No definitive allegations have been made to Judge Hellums or the Bar. The response from STCL was that personnel matters would be handled internally; thus I have no idea what, if anything, happened. I do know that the second letter was on your personal stationery which seems in concert with your statement that you were acting in your individual capacity.

From my perspective, you have made your position known, the court has reviewed your letters and they are part of the file. . . . However, in light of the sensitivity of this case, the parties may consider sealing the file, as in other family cases of parentage issues, to protect the children in the future. This has not been discussed to my knowledge.

As lawyers, we each are entitled to our positions. While I do not and did not agree with your methodology, I stated that you had a right to your opinion.

Paulsen later filed suit against Yarrell, but not McMurrey, for defamation per se based on the letter sent to Dean Guter and for tortious interference with a contract. Yarrell denied the allegations and filed a counterclaim for sanctions.

Yarrell filed three motions for summary judgment on the defamation claim. The first motion argued that the allegedly defamatory statements were protected by immunity because they involved statements made during litigation. This motion was denied. The second motion for summary judgment argued that the allegedly defamatory statements were not defamatory as a matter of law because they were true statements of fact, or they were statements of opinion, observation, or conclusion from which no claim for defamation may arise. The trial court granted the second motion for summary judgment on the defamation claim as to the letter to Dean Guter.

After this partial summary judgment was granted, Paulsen amended his petition, dropping the claim for tortious interference with a contract, but repleading defamation per se based on the letter sent to Dean Guter (notwithstanding the partial summary judgment) and adding a claim for defamation per se based on the fax to the State Bar. Yarrell filed a third traditional motion for summary judgment, which raised attorney immunity and litigation privilege. She also argued that the defamation claims failed as a matter of law because the court previously had ruled that the letter to Dean Guter was not defamatory and the defamation claims were based on the same statements. This time the court granted a partial summary judgment. Yarrell's counterclaims for sanctions remained pending.

In addition to seeking summary judgment, Yarrell moved for dismissal under the Texas Citizens Participation Act. In response to Yarrell's TCPA motion to dismiss, Paulsen filed a document entitled "Plaintiff's Response and Motion to Dismiss Defendant's CPRC Chapter 27 Motion to Dismiss." The trial court denied Yarrell's motion to dismiss, granted Paul-

sen's motion to dismiss, and declined to award attorney's fees. Both Yarrell and Paulsen filed interlocutory appeals, staying further action in the trial court. This court held that in the context of Paulsen's TCPA motion which was granted, no interlocutory appeal was permitted from the ancillary denial of his request for TCPA attorney's fees, and we affirmed the denial of Yarrell's untimely filed motion to dismiss. *See Paulsen v. Yarrell*, 455 S.W.3d 192, 196–98 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

On remand, Paulsen sought reconsideration of the summary-judgment rulings against him, and he sought attorney's fees and costs associated with the motion to dismiss that previously was granted in his favor. The trial court ruled that the summary judgment "should still be granted" on the grounds of attorney immunity. But it reconsidered and denied Paulsen's TCPA motion to dismiss, including the associated request for fees and costs, characterizing his argument as "a seductively creative interpretation of statutory intent that would lead to an endlessly circular and absurd result." Yarrell nonsuited her claims for sanctions, and the trial court rendered final judgment. Paulsen appealed.

## Analysis

On appeal, Paulsen challenges the trial court's ruling denying his "Plaintiff's Response and Motion to Dismiss Defendant's CPRC Chapter 27 Motion to Dismiss." Specifically, he contends that a TCPA motion to dismiss that targets another TCPA motion to dismiss is permitted and does not "lead to an 'absurd' result."

Paulsen also challenges the summary judgment against him on the defamation claims. He contends that statements that an attorney has violated disciplinary rules and engaged in criminal misconduct cannot

be considered nonactionable on the reasoning that they are merely statements of opinion. He further contends that Yarrell's statements were not protected by attorney immunity.

## I. Paulsen's TCPA motion to dismiss

In his first issue, Paulsen argues that the trial court erred by denying his TCPA motion to dismiss Yarrell's TCPA motion to dismiss. The trial court denied Paulsen's motion on the grounds that "TCPRC § 27.003 does NOT give rise to a motion to dismiss in response to a TCPRC § 27.003 motion to dismiss." We review this issue de novo because it involves construction of a statute as well as a trial court's ruling on a motion to dismiss under the TCPA. *See R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "In interpreting statutes, our primary purpose is to give effect to the legislature's intent by relying on the plain meaning of the text adopted by the legislature, unless a different meaning is supplied by statutory definition or is apparent from the context, or the plain meaning leads to absurd results." *John Moore Servs.*, 441 S.W.3d at 353 (citing *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)).

The expressly enacted legislative purpose of the TCPA is to "encourage and safeguard the constitutional rights" of people to "petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" while simultaneously protecting an individual's right "to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. The TCPA is "sometimes referred to as an anti-SLAPP

law—the acronym standing for strategic lawsuit against public participation." *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 713 n.6 (Tex. 2016). It provides for dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association" as defined by the statute. TEX. CIV. PRAC. & REM. CODE § 27.003(a). Dismissal under the TCPA is intended for meritless legal actions—a trial court "may not dismiss a legal action" under the TCPA "if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Once a TCPA motion to dismiss has been filed, "all discovery in the legal action is suspended until the court has ruled on the motion," *id.* § 27.003(c), with the exception of specific and limited discovery relevant to the motion to dismiss which may be allowed by the court on its own or a party's motion and upon a showing of good cause. *Id.* § 27.006(b). A successful movant is entitled to an award of "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require." *Id.* § 27.009(a)(1).

In support of the argument that the TCPA properly was invoked by his motion to dismiss Yarrell's TCPA motion, Paulsen asserts that courts in other jurisdictions that have similar anti-SLAPP statutes already have encountered cross-motions under their respective statutes. In support of this assertion, he relies on *Piping Rock Partners, Inc. v. David Lerner Assocs.*, 946 F.Supp.2d 957 (N.D. Cal. 2013), and *Rubel v. Daily News, LP*, 2010 NY Slip Op. 32407(U), 2010 WL 3536793 (Sup. Ct., N.Y. County 2010). Neither of those cases presents a fact pattern similar to this case. In *Piping Rock*, the plaintiffs sued the defendants for libel based on statements

made on their blog, and the defendants counterclaimed for tortious interference with a contract and commercial disparagement based on statements made on the plaintiffs' blog. 946 F.Supp.2d at 964–66. *Piping Rock* involved competing anti-SLAPP motions because each party filed an anti-SLAPP motion as to the other party's claims, not because one party filed an anti-SLAPP motion in response to an anti-SLAPP motion. *Id.* at 965, 975. In *Rubel*, a doctor sued a newspaper alleging defamation, and the newspaper filed an anti-SLAPP motion under the New York statute. *Rubel*, 2010 Slip Op. 32407(U), *5–6. Like *Piping Rock*, no party filed an anti-SLAPP motion in response to an anti-SLAPP motion. *See id.*

Paulsen also makes a "plain language" argument based on the TCPA. He reasons that the statute provides for early dismissal of a "legal action," and that a motion to dismiss under the TCPA is itself a legal action. TEX. CIV. PRAC. & REM. CODE § 27.003. The TCPA defines a "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). Paulsen contends that Yarrell's TCPA motion to dismiss is a "legal action" subject to a TCPA motion to dismiss because it is a "legal filing" that was filed in a court. He also argues that Yarrell's motion sought legal or equitable relief because it "request[ed]" dismissal under Chapter 27, an award of attorney's fees and costs, and such other and further relief to which she was entitled.

Paulsen further argues that treating Yarrell's TCPA motion to dismiss as a SLAPP action fits the purpose of the statute because his lawsuit was brought to vindicate his "right to petition" by submitting an amicus brief in a public judicial proceeding. *Id.* § 27.003. The TCPA de-

fines the exercise of the right to petition to include a communication in or pertaining to a judicial proceeding. *Id.* § 27.001(4)(A)(i). Paulsen contends that because his lawsuit arose from his submission of a letter brief in a judicial proceeding, Yarrell's attempt to dismiss his suit by way of the TCPA dismissal procedure implicated his right to petition.

Yarrell characterizes Paulsen's filing as only a response to her motion to dismiss. She argues that because it was not truly a motion, Paulsen was not a successful movant, and he was not entitled to attorney's fees and costs under the TCPA. But this argument does not address Paulsen's contention that he was entitled to use the TCPA's dismissal procedure in response to Yarrell's motion to dismiss.

Yarrell also contends that Paulsen's interpretation would lead to a circular, absurd result, relying upon *In re Estate of Check*, 438 S.W.3d 829 (Tex. App.—San Antonio 2014, no pet.), and *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181 (Tex. App.—El Paso 2014, no pet.). In *Estate of Check*, the appellant argued that an amended counterclaim was a "legal action" for the purposes of the expedited dismissal procedure of the TCPA, an interpretation which would have meant that his motion was timely instead of late. 438 S.W.3d at 836. The court of appeals rejected the appellant's literal interpretation of "legal action," reasoning that although the statutory language "might seem to support Check's expansive interpretation," "such an interpretation would lead to absurd results not intended by the Legislature." *Id.* In reaching this conclusion, the San Antonio court of appeals focused on the Legislature's purpose of expediting dismissals early in the process of litigation. *Id.* By the court's reasoning, applying the TCPA dismissal procedures to motions such as motions for sanctions and motions for sum-

mary judgment would restart continually the timetables and push the dismissals later in the lawsuits, contrary to the intent of the Legislature. *Id.*

In *Miller Weisbrod*, the El Paso court of appeals similarly rejected the appellant's contention that an amended petition is a legal action under the TCPA. 511 S.W.3d at 192–93. As did the appellate court in *Estate of Check*, the court of appeals focused on the "purpose of the TCPA" to ensure that "courts will dismiss SLAPP suits quickly and without the need for prolonged and costly proceedings." *Id.* at 193. Because construing an amended petition as a legal action could "create a perpetual opportunity" for filing TCPA dismissal motions, the court of appeals held that the amended petition was not a legal action. *Id.*

██ We need not resort to the absurdity doctrine[1] to conclude that the TCPA does not authorize the filing of a TCPA countermotion to dismiss, purportedly justified by a theory that the statute's definition of "legal action" includes TCPA dismissal motions. The portion of the definition relied upon by Paulsen is a catch-all following a list of other covered "legal actions": "[a] lawsuit, [b] cause of action, [c] petition, [d] complaint, [e] cross-claim, or [f] counterclaim or [g] any other judicial pleading or filing that requests legal or equitable relief." TEX. CIV. PRAC. & REM. CODE § 27.001(6). When the more specific

items [a] through [f], are followed by a catch-all "other," [g], the doctrine of *ejusdem generis* teaches that the latter must be limited to things like the former. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015); *In re Elliott*, 504 S.W.3d 455, 475 (Tex. App.—Austin 2016, original proceeding) (Pemberton, J., concurring) (applying *ejusdem generis* canon to definition of "legal action" in TEX. CIV. PRAC. & REM. CODE § 27.001(6)). That canon provides that when "general words follow an enumeration of two or more things, they apply only to ... things of the same general kind or class specifically mentioned." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012); *see also Hilco Elec. Co-op., Inc. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003).

For these purposes the enumeration of "lawsuit," "cause of action," "petition," "complaint," "cross-claim," and "counterclaim," is best characterized by the observation that each element of this class is a procedural vehicle for the vindication of a legal claim, in a sense that is not true for a motion to dismiss.[2] Were we to conclude otherwise, the proliferation of "piecemeal or seriatim 'motions to dismiss' attacking myriad 'legal actions' that consist merely of individual filings within or related to a lawsuit, as opposed to the underlying lawsuit and substantive claims that are the

---

1. As noted by Justice Willett, the "the bar for reworking the words our Legislature passed into law is high, and should be." *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013). "The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." *Id.; see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 237–38 (2012) (describing limitations on the absurdity doctrine necessary to prevent "judicial revision of public ... texts to make them (in the judges' view) more reasonable").

2. *Accord In re Elliott*, 504 S.W.3d 455, 477–78 (Tex. App.—Austin 2016, orig. proceeding) (Pemberton, J., concurring) (suggesting that the catch-all portion of the "legal action" definition functions "primarily as a safeguard against creative repleading of what are substantively lawsuits, causes of action, petitions, complaints, counterclaims, or cross-claims so as to avoid the TCPA's dismissal mechanisms").

Act's core focus" would result in application of the TCPA that "strays from—and, indeed, undermines through cost and delay—its manifest purpose to secure quick and inexpensive dismissal of meritless 'legal actions' that threaten expressive freedoms." *Elliott*, 504 S.W.3d at 480 (Pemberton, J., concurring).

Furthermore, Paulsen's proposed interpretation of "legal action" could allow a plaintiff to defeat a motion to dismiss under the TCPA while avoiding the requirement to show that his claim has merit by establishing a prima facie case for each essential element of his claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005. Paulsen's proposed interpretation would frustrate the attorney's fees provisions of the TCPA in a manner that finds no support in the statute's text. The TCPA mandates an award of attorney's fees and costs for the successful movant, but it only requires such an award to the nonmovant on a showing that the motion to dismiss "is frivolous or solely intended to delay." TEX. CIV. PRAC. & REM. CODE § 27.009(b). Paulsen's interpretation would allow a nonmovant to obtain a mandatory award of attorney's fees (as he seeks to obtain in this case) without a showing that the initial TCPA motion to dismiss was frivolous or solely intended to delay.

■ We hold that the TCPA's dismissal mechanism does not authorize a countermotion to dismiss as a substitute for a standard response in opposition. As such, the trial court correctly denied Paulsen's motion to dismiss Yarrell's TCPA motion to dismiss. We overrule Paulsen's first issue.

## II. Defamation claims

■ Paulsen has raised four issues relating to the trial court's grant of a summary judgment on his defamation claims. In this case, the trial court twice granted interlocutory summary judgment. The first interlocutory summary judgment addressed Paulsen's defamation claims based only on the letter to Dean Guter. It was based on the grounds that the statements in that letter were substantially true and nonactionable statements of opinion. The second interlocutory summary judgment addressed Paulsen's defamation claims based on the letter to Dean Guter and the fax transmittal of that letter to the State Bar. Although the trial court did not specify the grounds upon which summary judgment was granted, the motion was based, in part, on the grounds that the statements in that letter and fax transmittal of it were protected by attorney immunity and by the litigation privilege. The motion for summary judgment further argued that neither the letter to Dean Guter nor the fax to the State Bar were defamatory as a matter of law because they contained the same allegedly defamatory statements the court already found were not defamatory.

In addition, upon remand after an interlocutory appeal, the trial court ruled on Paulsen's motion to reconsider the earlier motions for summary judgment. In the final judgment, without vacating or overruling the prior interlocutory partial summary judgments, the trial court ruled that summary judgment as to the defamation claims, Paulsen's only remaining claims, remained appropriate based on attorney immunity.

■ Unless modified, interlocutory orders merge into the final judgment. *See Roccaforte v. Jefferson Cty.*, 341 S.W.3d 919, 924 (Tex. 2011). When the trial court has specified the basis for its grant of summary judgment, we will consider all the summary-judgment grounds upon which the trial court has ruled, that the movant has preserved for appellate review, and that are "necessary for final disposition of the appeal." *Cincinnati Life Ins.*

Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996). When necessary, we may "consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy." Id.

In its final judgment, the trial court ruled that summary judgment remained appropriate on the basis of attorney immunity. However, because the interlocutory orders granting summary judgment were not modified, they merged into the final judgment, and therefore we conclude that the other grounds argued by the parties on appeal, specifically substantial truth and the litigation privilege, also are preserved for review. We may affirm if any of these grounds provides support for the trial court's grant of summary judgment. Cincinnati Life, 927 S.W.2d at 626.

We review de novo a trial court's ruling on a motion for summary judgment. Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009). A movant for traditional summary judgment must establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. See TEX. R. CIV. P. 166a(c); Provident Life & Accid. Ins. Co. v. Knott, 128 S.W.3d 211, 215–16 (Tex. 2003). A genuine issue of material fact exists if the nonmovant produces evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. See Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005)). A defendant moving for traditional summary judgment must negate conclusively at least one essential element of each of the plaintiff's causes of action or establish conclusively each element of an affirmative defense. Henkel v. Norman, 441 S.W.3d 249, 251 (Tex. 2014) (per curiam).

Among the various summary-judgment grounds at issue, Paulsen argues that the trial court erred by granting summary judgment based on the grounds that the statements in the letter to Dean Guter are substantially true or merely statements of opinion.

 In general, a person who is the subject of false and defamatory statements of fact may bring a cause of action for defamation. See In re Lipsky, 460 S.W.3d 579, 593 (Tex. 2015) (citing WFAA–TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998)). Only objectively verifiable statements of fact, as opposed to mere statements of opinion, may be the basis of a defamation action. See Bentley v. Bunton, 94 S.W.3d 561, 579–81 (Tex. 2002). Statements "that are not verifiable as false cannot form the basis of a defamation claim." Neely v. Wilson, 418 S.W.3d 52, 62 (Tex. 2013). Subjective assertions are not actionable in defamation. See Fawcett v. Rogers, 492 S.W.3d 18, 28 (Tex. App.— Houston [1st Dist.] 2016, no pet.); Vice v. Kasprzak, 318 S.W.3d 1, 18 (Tex. App.— Houston [1st Dist.] 2009, pet. denied). "All assertions of opinion are protected by the First Amendment of the United States Constitution and article I, section 8 of the Texas Constitution." Carr v. Brasher, 776 S.W.2d 567, 570 (Tex. 1989).

 We construe an allegedly defamatory statement as a whole, not merely based upon individual statements considered in isolation, and we determine whether a reasonable person of ordinary intelligence would perceive the entirety of the publication as substantially true. See Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114–16 (Tex. 2000). A publication may include isolated statements of verifiable fact but nevertheless convey a false or defamatory meaning when construed as a whole due to the omission or juxtaposition of facts. Id. at 114.

In *Bentley v. Bunton*, 94 S.W.3d 561 (Tex. 2002), the issues centered on whether allegedly defamatory statements were statements of fact or opinion. Over a period of months, Bunton, the host of a local public-access call-in television show, repeatedly told viewers that Bentley, a local judge, was corrupt. *Bentley*, 94 S.W.3d at 566–77. Eventually, Bentley sued Bunton for defamation. *Id.* at 574. In determining whether Bunton's repeated accusations of corruption were statements of fact or opinion, the Supreme Court of Texas considered the statements' verifiability and the context in which they were made. *Id.* at 583. Although Bunton often said that it was his opinion that Bentley was corrupt, he also insisted that his charges were supported by provable facts, repeatedly asserted that he had seen evidence that supported his allegations, referred to specific instances and cases that he claimed were examples of Bentley's corruption, invited Bentley to appear on the show to refute the factual charges against him, and assured viewers that he had thoroughly investigated the matters of which he spoke. *Id.* at 583–84. Under these circumstances, the Supreme Court held that Bunton's statements were not protected statements of opinion. *Id.* at 584.

In this case, Paulsen argues that summary judgment was not proper because Yarrell's statements were reasonably capable of a defamatory meaning. Paulsen urges this court to consider three statements from Yarrell's letter to Dean Guter: (1) "Paulsen's correspondence … constitutes improper attempts to influence a tribunal"; (2) "Paulsen's interference with this most serious legal matter constitutes a grave breach of legal ethics"; and (3) "his conduct invites the Judge to violate Canon 2(B) of the Code of Judicial Conduct." Paulsen's approach to reviewing whether these statements are defamatory would require us to consider phrases without the context of the rest of the sentence, let alone the "gist" of the letter as a whole. *See Turner*, 38 S.W.3d at 113–14.

Instead of considering specific phrases in isolation, we consider the entirety of the letter to Dean Guter to determine whether a reasonable person would perceive it as substantially true, or if the statements instead are nonactionable opinions or purely subjective assertions. Many of the statements in the letter to Dean Guter are objectively verifiable statements of fact. For example, the first paragraph referred to two letters sent by Paulsen to Judge Hellums on South Texas letterhead. The second paragraph of Yarrell's letter stated that Paulsen wrote that he was submitting his brief "as an individual" but he used South Texas letterhead. These documents appear in the appellate record, and the facts are as stated in Yarrell's letter.

The next four paragraphs of Yarrell's letter to Dean Guter related to her impressions of Paulsen's actions. In the third paragraph, Yarrell stated that "Paulsen's correspondence was not requested by the Court or by any party in this matter"—a fact which is undisputed—"and constitutes improper attempts to influence a tribunal." While this assertion resembles a statement of fact when read in isolation, we must evaluate it in context of the entire letter. Yarrell further wrote:

> We are researching what legal options we may have to exercise on behalf of our client regarding Professor Paulsen's inappropriate conduct, including what liability South Texas College of Law may carry; we are also researching if Professor Paulsen's correspondence constitutes a violation of Texas Disciplinary Rules of Professional Conduct 3.05.

Rule 3.05, "Maintaining Impartiality of Tribunal," prohibits a lawyer from seeking "to influence a tribunal concerning a pend-

ing matter by means prohibited by law or applicable rules of practice or procedure." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.05(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (Tex. State Bar R., art. X, § 9). Because Yarrell affirmatively stated that her research was ongoing and used the word "if," context reveals the earlier statement in the same letter to be a statement of opinion based on the objectively verifiable facts recounted in the letter. The same is true for her assertion that Paulsen's interference with "this most serious legal matter constitutes a grave breach of legal ethics and any and all such correspondence from Professor Paulsen should cease immediately." Nothing in this statement is objectively verifiable. Therefore, these are purely subjective assertions of opinion. *See Bentley*, 94 S.W.3d at 580–81.

Yarrell's letter also stated that while Paulsen is "certainly entitled to his opinions, his conduct invites the Judge to violate Canon 2(B) of the Code of Judicial Conduct." That rule provides:

> A judge shall not allow any relationship to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.

Tex. Code Jud. Conduct, Canon 2(B), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. B. The conduct referenced by Yarrell was the submission of the letters to Judge Hellums, and those letters were attached to the allegedly defamatory letter. Yarrell did not imply that there was some other conduct that invited Judge Hellums to violate the Code of Judicial Conduct. She stated that sending the unsolicited letters, which she attached to her letter to Dean Guter, was itself the conduct that invited Judge Hellums to violate the Code of Judicial Conduct. This was a purely subjective assertion. *See, e.g., Hadlock v. Tex. Christian Univ.*, No. 2-07-290-CV, 2009 WL 485669, at *4 (Tex. App.—Fort Worth Feb. 26, 2009, pet. denied) (mem. op.).

Having considered the entirety of the letter to Dean Guter, we conclude that a reasonable person would perceive the letter to be Yarrell's opinion coupled with some statements of fact, which have been shown to be true, and therefore not actionable in defamation. As such, we hold that the trial court correctly granted summary judgment on this basis.

In the third motion for summary judgment, Yarrell argued that the defamation claims failed as a matter of law because the court previously had ruled that the letter to Dean Guter was not defamatory as a matter of law and both defamation claims were based on the letter to Dean Guter. Because the trial court granted the third motion for summary judgment without specifying a reason, and that interlocutory order merged into the final judgment, we may affirm the court's entry of final judgment based on our conclusion that a reasonable person would have perceived the letter to Dean Guter to be Yarrell's opinion coupled with factual statements that have been shown to be true. We overrule Paulsen's second issue. Because we can affirm the judgment based on the disposition of this issue, we need not address Paulsen's remaining appellate issues. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the judgment of the trial court.