

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-19-00196-CV

**IN THE GUARDIANSHIP OF** James E. **FAIRLEY**,

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2011-PC-1068
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by: Liza A. Rodriguez, Justice

Sitting: Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 11, 2020

AFFIRMED

Appellant Juliette Fairley ("Juliette") appeals from the trial court's interlocutory order denying her motion to dismiss filed pursuant to the Texas Citizens Participation Act ("TCPA"), also known as Texas's anti-SLAPP statute. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001-.011.[1] First, she argues the trial court did not have subject-matter jurisdiction over the proceedings and thus its order is void. Second, she argues that the trial court erred in denying her motion to dismiss pursuant to the TCPA because she made her required showing under chapter 27 and Appellees Mauricette N. Fairley ("Mauricette") and Dorothy Y. Fairley Merzouk ("Dorothy") did not

---

[1]All citations in this opinion to the TCPA are to the version in effect before the September 2019 amendments became effective. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961-64 (current version at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011), amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, §§ 1–3, 5, 2013 Tex. Gen. Laws 2499, 2499-500 (the version at issue in this opinion); *see also* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12, 2019 Tex. Gen. Laws 684, 687 (amending TCPA and providing that suit filed before amendments become effective "is governed by the law in effect immediately before that date").

respond to the motion with any evidence in support of their claims. We affirm the trial court's order.

## PROCEDURAL BACKGROUND

The dispute between the parties has its origins in a 2014 guardianship proceeding involving James E. Fairley ("James"), the husband of Mauricette and father of Juliette. On October 28, 2014, Mauricette filed an Application for Appointment of Temporary Guardian of the Person in Bexar County Probate Court No. 2, requesting that she be appointed temporary guardian of her eighty-five-year-old husband, James E. Fairley ("James"), who was incapacitated due to severe dementia/Alzheimer's Disease. Mauricette's application alleged that Juliette had improperly removed James from his residence/nursing home and taken him to New York State where she resided. According to the application, Juliette had improperly forced James to sign a power of attorney that appointed her as his agent. Mauricette's application further alleged that Juliette was aware of her father's incapacity and attached as evidence a 2012 court filing where Juliette had sought to be appointed her father's permanent guardian due to his incapacity. Mauricette also attached an order signed on September 19, 2014, by the judge of Probate Court No. 2 dismissing Juliette's application without prejudice.

On December 8, 2014, Mauricette filed an Application for Appointment of Permanent Guardian of the Person in Probate Court No. 2, requesting that she be named permanent guardian of James. The record reflects that the citation was prepared by the county clerk on December 10, 2014. The "Sheriff's or Officer's Return" reflects that James E. Fairley was served in person with Mauricette's application for appointment as permanent guardian on January 9, 2015, at 3:44 p.m. by a private process server who affirmed that she was over twenty-one years of age, "a disinterested person," and "competent to make oath of these facts."

On December 12, 2014, the probate court appointed Mauricette temporary guardian pending a contest filed by Juliette. On November 20, 2015, the probate court declared James "totally incapacitated without the authority to exercise any rights or powers for himself or his Estate" and appointed Mauricette the permanent "Guardian of the Person of James E. Fairley, an Incapacitated Person, with all of the duties, powers, and limitations hereby granted to a guardian by the laws of this state."

Four years later, on December 27, 2018, James died. Before the guardianship proceeding was settled or closed, on January 2, 2019, Juliette filed a wrongful death suit against her sister Dorothy[2] and Mauricette in the 225th Judicial District Court of Bexar County, Texas, which was docketed as Cause No. 2019-CI-00085. Juliette sought to enjoin Mauricette from making any funeral arrangements or otherwise disposing of James's remains. Juliette sued Mauricette individually and as trustee of the Fairley Family Trust. Juliette sued Dorothy individually and also as a beneficiary of the Fairley Family Trust. Juliette alleged that on December 27, 2018, both Mauricette and Dorothy knew that James "was in severe pain and distress" and that despite Juliette requesting James be transported to the emergency room, Mauricette "refused medical care to James," which led to his death that afternoon. She further brought a survival action, arguing that James, "before dying, had a cause of action against" Mauricette and Dorothy "for negligence, gross negligence, and/or claim for their wrongful and/or felonious conduct which resulted in his emotional suffering, and breach of fiduciary duties." Juliette further alleged that as trustee of the family trust, Mauricette had breached fiduciary duties owed to Juliette.

On January 7, 2019, Mauricette filed in the probate court a Motion to Transfer Matter Related to Guardianship, arguing that pursuant to section 1022.007 of the Texas Estates Code, the

---

[2]In her petition, Juliette states that Dorothy is the biological daughter of Mauricette and the adopted daughter of James.

wrongful death cause of action filed by Juliette, Cause No. 2019-CI-00085, should be transferred to the pending guardianship proceeding. On February 28, 2019, the probate court signed an order transferring Cause No. 2019-CI-00085 to the pending guardianship proceeding. On March 4, 2019, Mauricette and Dorothy filed a Motion to Dismiss Pursuant to Texas Rule of Civil Procedure 91a, arguing that Juliette's claims against them had no basis in law or fact. On March 6, 2019, Juliette filed a motion to dismiss pursuant to the TCPA, arguing that Mauricette's "Motion to Transfer," along with Mauricette and Dorothy's "Rule 91a Motion to Dismiss," were "classic examples of Strategic Lawsuit Against Public Participation, or 'SLAPP' 'legal actions' and an attempt to restrict [Juliette's] freedom of speech, right to petition, and right to association." After Mauricette and Dorothy responded to Juliette's motion to dismiss, the probate court denied Juliette's motion. Juliette then filed this interlocutory appeal, arguing that the trial court should have granted her motion to dismiss pursuant to the TCPA.

## SUBJECT-MATTER JURISDICTION

Juliette first argues that the probate court's orders in the underlying proceeding are void because the probate court never acquired subject-matter jurisdiction over the proceeding. Subject-matter jurisdiction "is essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). It "may not be waived by the parties" and "is an issue that may be raised for the first time on appeal." *Id*. at 445. "Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). If an appellate court determines that the trial court lacks subject-matter jurisdiction, it "must reverse the trial court's judgment and dismiss the case." *Merit Mgmt. Partners I, L.P. v. Noelke*, 266 S.W.3d 637, 643 (Tex. App.—Austin 2008, no pet.).

According to Juliette, the probate court never acquired subject-matter jurisdiction over its proceedings because James was served with citation for Mauricette's guardianship application by a private process server, which Juliette argues violates section 1051.103 of the Texas Estates Code.[3] Section 1051.103, titled "Service of Citation for Application for Guardianship," provides in relevant part the following:

> *The sheriff or other officer* shall personally serve citation to appear and answer an application for guardianship on: (1) a proposed ward who is 12 years of age or older
> . . . .

TEX. EST. CODE § 1051.103(a) (emphasis added). Juliette argues that because a private process server is not a "sheriff or other officer" as required by section 1051.103(a), the probate court never acquired subject-matter jurisdiction and any orders it issued are void. She argues that the appellate record "affirmatively shows that appellees did not follow [section 1051.103(a)] in serving citation(s) of application for guardianship on James E. Fairley, but in fact circumvented the statute in favor of the 1994 county-level administrative order signed by" the Bexar County probate judges.[4] This 1994 administrative probate order referred to by Juliette orders that all private process servers "licensed by the Bexar County District Court, each of whom is not less than eighteen (18) years of age nor interested in the outcome of the suit," are "eligible to serve process in the Probate Courts of Bexar County, Texas."

In support of her argument that the probate court never acquired subject-matter jurisdiction over the underlying cause, Juliette relies on the following sentence from *In re Guardianship of V.A.*, 390 S.W.3d 414, 420-21 (Tex. App.—San Antonio 2012, pet. denied): "We do not dispute

---

[3] Although section 1051.103 has been amended since the time James was served with citation on January 9, 2015, the relevant language "sheriff or other officer" has not been modified. *See* Act of June 15, 2017, 85th Leg., ch. 1125, § 1 (amending section 1051.103 to add subsection (c)).

[4] One of the Bexar County probate judges at the time was Chief Justice Sandee Bryan Marion who has voluntarily recused herself from this appeal.

the contention that a probate court lacks jurisdiction over a guardianship proceeding where the proposed ward has not been properly served." In *Guardianship of V.A.*, 390 S.W.3d at 416, this court considered the issue of whether a probate court lacked subject-matter jurisdiction over a guardianship proceeding "because the court failed to comply with the mandatory requirements of section 633" of the Texas Probate Code.[5] This court first noted that "[t]he failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law." *Id*. at 417 (quoting *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009)).[6] However, this court explained that "[t]he modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." *Id*. at 417-18 (quoting *DeSoto*, 288 S.W.3d at 393).[7] Therefore, this court analyzed the "statutory provision under the presumption that the legislature did not intend to make the provision jurisdictional." *Id*. (quoting *DeSoto*, 288 S.W.3d at 394). According to this court, "the fact that a statute's requirements are mandatory does not, by itself, make the requirements jurisdictional." *Id*. The court also examines "'the presence or absence of specific consequences for noncompliance' in determining whether a provision is jurisdictional." *Id*. (quoting *DeSoto*, 288 S.W.3d at 396). "Finally, [the court] examine[s] the resulting consequences from each possible interpretation." *Id.*

---

[5]The Texas Probate Code has since become the Texas Estates Code. Section 633 of the former Probate Code was the predecessor to current section 1051.103 of the Estates Code. Subsection (c) provided that "[t]he sheriff or other officer shall personally serve citation to appear and answer the application for guardianship on: (1) a proposed ward who is 12 years of age or older; (2) the parents of a proposed ward if the whereabouts of the parents are known or can be reasonably ascertained; (3) any court-appointed conservator or person having control of the care and welfare of the proposed ward; (4) a proposed ward's spouse if the whereabouts of the spouse are known or can be reasonably ascertained; and (5) the person named in the application to be appointed guardian, if that person is not the applicant." *See* Act of June 19, 1993, 73d Leg., ch. 957, § 1, *repealed by* Act of June 17, 2011, 82d Leg., ch. 823, § 1.02.

[6]"If the requirement is not jurisdictional, . . . the tribunal may hear the case, although other consequences may flow from a party's failure to comply with the requirement." *DeSoto*, 288 S.W.3d at 393 (citing *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75-77 (Tex. 2000)).

[7]In following this modern policy, the supreme court explained that "deeming a provision jurisdictional 'opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment.'" *DeSoto*, 288 S.W.3d at 393 (quoting *Dubai*, 12 S.W.3d at 76).

The appellant in *Guardianship of V.A.* argued that noncompliance with subsections (f) and (d-1)[8] of former section 633 resulted in the probate court failing to acquire subject-matter jurisdiction over the proceeding. This court noted that it was undisputed that neither subsection (f) or (d-1) had been strictly complied with. Further, the plain language of subsections (f) and (d-1) contained mandatory language. *See Guardianship of V.A.*, 390 S.W.3d at 420. "However, neither section 633(f) nor 633(d-1) contain[ed] express language indicating a legislative intent to make these provisions jurisdictional." *Id*. Further, this court explained that the legislature had "given specific consequences for failure to give notice to certain persons" by stating the following: "The validity of a guardianship created under this chapter is not affected by the failure of the applicant to comply with the requirements of Subsections (d)(2)-(9) of this section." *Id*. (quoting former TEX. PROB. CODE § 633(f)). This court reasoned that "[i]mplicit in this statement is that failure to comply with any other provision may affect the validity of the appointment of a guardian." *Id*. "However, this general implication does not indicate that the validity of the proceeding can be challenged under a jurisdictional-defect theory." *Id.* Finally, this court explained that "the consequences of finding subsections 633(f) and 633(d–1) jurisdictional under the present facts favor a determination that compliance with them is non-jurisdictional." *Id*. "Guardianship proceedings are necessarily ongoing and may last for many years and consist of numerous orders." *Id*.

> Appellants argue that courts have routinely held that personal service on a proposed ward of the application for guardianship is jurisdictional. *We do not dispute the*

---

[8]Subsection (f) provided that the "court may not act on an application for the creation of a guardianship until the Monday following the expiration of the 10-day period beginning the date service of notice and citation has been made as provided by Subsections (b), (c), and (d)(1) of this section and the applicant has complied with Subsection (d-1) of this section." *See* Act of June 19, 1993, 73d Leg., ch. 957, § 1, *repealed by* Act of June 17, 2011, 82d Leg., ch. 823, § 1.02 (former TEX. PROB. CODE ANN. § 633(f)). Subsection (d-1) required the applicant to file with the court "(1) a copy of any notice required by Subsection (d) of this section and the proofs of delivery of the notice; and (2) an affidavit sworn to by the applicant or the applicant's attorney stating: (A) that the notice was mailed as required by Subsection (d) of this section; and (B) the name of each person to whom the notice was mailed, if the person's name is not shown on the proof of delivery." *Id*. (former TEX. PROB. CODE ANN. § 633 (d-1)).

*contention that a probate court lacks jurisdiction over a guardianship proceeding where the proposed ward has not been properly served.* However, compliance with the ten-day requirement of 633(f) and the affidavit requirement of 633(d–1) is inherently different from failing to personally serve a proposed ward. Determining subsections (f) and (d–1) are jurisdictional and subject to attack by a party who does not belong to section 633(c) or (d)(1) could subject a multi-decade long guardianship case to attack by a person wholly unconcerned or unconnected with the ward.

*Id*. at 420-21 (emphasis added) (citations omitted). Thus, this court held that the requirements in subsection (f) and (d-1) were not jurisdictional. *Id*.

As noted, Juliette cites *Guardianship of V.A.* for the proposition that the probate court in the underlying cause never acquired subject-matter jurisdiction over the guardianship proceeding, relying on the statement that a probate court lacks jurisdiction over a guardianship proceeding where the proposed ward has not been served. *See id*. However, the appellate record in this case shows that the proposed ward, James, was personally served. Thus, this is not a case where the ward was never served. *See Gauci v. Gauci*, 471 S.W.3d 899, 901-02 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Failure to personally serve an application for guardianship on a proposed ward deprives the court of jurisdiction."); *In re Martinez*, No. 04-07-00558-CV, 2008 WL 227987, at *1 (Tex. App.—San Antonio 2008, orig. proceeding) (explaining that the "trial court's jurisdiction over a proposed guardianship requires service of citation on the proposed adult ward" and because it was undisputed that the proposed ward was not served, the probate court never acquired jurisdiction to sign orders in the proceeding). Instead, the issue is whether service on the ward by a private process server as authorized by the administrative order conferred subject-matter jurisdiction to the probate court. We hold that it did.

Juliette argues that service by a "sheriff or other officer" as required by section 1051.103(a)(1) means that a sheriff, constable, or other elected official must serve citation of the application of guardianship. She argues that the phrase "other officer" "has been held to mean

Constable or other elected official, not private process servers." However, in support of this assertion she cites a court of appeals opinion that was reversed by the supreme court: *Insurance Co. v. Lejuene*, 261 S.W.3d 852 (Tex. App.—Texarkana 2008), *rev'd*, 297 S.W.3d 254 (Tex. 2009) ("*Lejuene I*"). Moreover, the issue in *Lejuene* was not whether a private process server as authorized by an administrative order could be an "other officer" pursuant to section 1051.103(a). Instead, the issue was whether a default judgment should be overturned because the district court's endorsement of the return of citation lacked the time of service as required by the Texas Rules of Civil Procedure. *Ins. Co. v. Lejuene*, 297 S.W.3d 254, 255 (Tex. 2009) ("*Lejuene II*"). Neither the court of appeals's opinion nor the supreme court's opinion stands for the proposition that an "officer" as used in section 1051.103(a) of the Estates Code must be a sheriff, constable, or other elected official. *See id*. at 255-56; *Lejuene I*, 261 S.W.3d at 858-59.

Finally, we note that Texas Rule of Civil Procedure 103, titled "Who May Serve," governs service of citation:

> Process—including citation and other notices, writs, orders, and other papers issued by the court—may be served anywhere by (1) any sheriff or constable *or other person authorized by law*, (2) *any person authorized by law or by written order of the court who is not less than eighteen years of age*, or (3) any person *certified under order of the Supreme Court*. Service by registered or certified mail and citation by publication must, if requested, be made by the clerk of the court in which the case is pending. But no person who is a party to or interested in the outcome of a suit may serve any process in that suit, and, unless otherwise authorized by a written court order, only a sheriff or constable may serve a citation in an action of forcible entry and detainer, a writ that requires the actual taking of possession of a person, property or thing, or process requiring that an enforcement action be physically enforced by the person delivering the process. The order authorizing a person to serve process may be made without written motion and no fee may be imposed for issuance of such order.

(emphasis added). In this case, the 1994 administrative order authorized private process servers to serve process in the probate courts of Bexar County. Further, in 2006, the supreme court issued an Amended Order on Certification or Persons Authorized to Serve Process under Rules 103 and

536(a), Texas Rules of Civil Procedure, which provides the procedure for becoming certified to serve process in Texas. The appellate record reflects that on December 11, 2014 at 11:17 a.m., citation was personally served on James by LeeAnn Magee, PSC-7047, who was licensed to serve process in Bexar County and who was certified under order of the supreme court. Thus, Magee was a person authorized by law and authorized by written order of the court who is not less than eighteen years of age. *See* TEX. R. CIV. P. 103. She was also a person certified under order by the supreme court. *See id.* We therefore hold that under the facts of this case, James was served in conformity with section 1051.103(a), and thus the probate court acquired subject-matter jurisdiction over the guardianship proceeding.

### MOTION TO DISMISS

In her second issue, Juliette argues the trial court should have granted her motion to dismiss pursuant to the TCPA. The TCPA's stated purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. In an aim to fulfill this purpose, the TCPA provides for dismissal of a "legal action" that "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association" unless the "party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* §§ 27.003(a), 27.005(c). "Legal action" is defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6).

In the underlying proceeding, Juliette brought a survival action on behalf of James in state district court, alleging that Mauricette and Dorothy were negligent and grossly negligent and that

their alleged wrongful conduct resulted in James's physical and emotional suffering. Juliette also alleged that Mauricette and Dorothy breached their fiduciary duties to James. Because Juliette had filed the lawsuit in state district court and not the probate court, Mauricette moved to transfer the proceeding to the probate court pursuant to section 1022.007 of the Texas Estates Code, which was granted. Further, in response to Juliette's lawsuit, Mauricette and Dorothy filed a motion to dismiss Juliette's claims against them pursuant to Texas Rule of Civil Procedure 91a. Juliette then filed her own motion to dismiss under the TCPA. She argued the transfer of her lawsuit to the probate court, along with Mauricette and Dorothy's motion to dismiss pursuant to rule 91a, were "legal actions" that were based on, related to, or were in response to her exercise of her rights to petition, speak freely, associate freely, "and otherwise participate in government to the maximum extent permitted by law." Because we conclude that neither Mauricette's motion to transfer nor Mauricette and Dorothy's motion to dismiss pursuant to rule 91a were "legal actions" for purposes of the TCPA, we affirm the trial court's order denying Juliette's motion to dismiss.

Whether the TCPA applies to the motion to transfer pursuant to section 1022.007 of the Estates Code or to the motion to dismiss pursuant to rule 91a are issues of statutory interpretation that we review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). In construing the TCPA, we "determine and give effect to the Legislature's intent" as expressed in the language of the statute. *Id*. In doing so, "we consider both the specific statutory language at issue and the statute as a whole." *Misko v. Johns*, 575 S.W.3d 872, 876 (Tex. App.—Dallas 2019, pet. denied) (citations omitted). "We endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *Id*. And, we "apply the statute's words according to the plain and common meaning, 'unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results.'" *Id*. (quoting *Youngkin*, 546 S.W.3d at 680).

Neither the motion to transfer pursuant to section 1022.007 of the Estates Code nor the motion to dismiss pursuant to rule 91a is "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (definition of "legal action"). Thus, the issue is whether either the motion to dismiss pursuant to rule 91a can be considered "any other judicial pleading or filing that requests legal or equitable relief." *Id*. This "catch-all provision" included within the statutory definition of "legal action" "appears to encompass any procedural vehicle for the vindication of a legal claim." *Misko*, 575 S.W.3d at 876 (citations omitted). In fact, however, it "'functions primarily as a safeguard against creative re-pleading of what are substantively lawsuits, causes of action, petitions, complaints, counterclaims, or cross-claims so as to avoid the TCPA dismissal mechanisms' and, when viewed in light of the purpose of the TCPA, must be given a 'somewhat restrictive application.'" *Id*. at 876-77 (quoting *Dow Jones & Co. v. Highland Capital Mgmt., L.P.*, 564 S.W.3d 852, 857 (Tex. App.—Dallas 2018, pet. denied)).

Given this limited application, we conclude Mauricette's motion to transfer Juliette's claims to the probate court pursuant to section 1022.007 is not a legal action under the TCPA. Instead, it is a procedural vehicle relating to which court should decide the underlying matter; it was not an adjudication of the merits of Juliette's claims. *See* TEX. EST. CODE ANN. § 1022.007 (permitting the judge of a statutory probate court to "transfer to the judge's court from a district, county, or statutory court a cause of action that is a matter related to a guardianship proceeding pending in the statutory probate court" and "consolidate the transferred cause of action with the guardianship proceeding to which it relates and any other proceedings in the statutory probate court that are related to the guardianship proceeding").

Similarly, we conclude that Mauricette and Dorothy's motion to dismiss pursuant to rule 91a is not a "legal action" as contemplated by the TCPA. Rule 91a and the TCPA were both the result of the 2011 Texas Legislature. The 2011 Texas Legislature directed the supreme court to

> adopt rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence. The rules shall provide that the motion to dismiss shall be granted or denied within 45 days of the filing of the motion to dismiss. The rules shall not apply to actions under the Family Code.

TEX. GOV'T CODE ANN. § 22.004(g). The result of this legislative mandate was rule 91a. *See* TEX. R. CIV. P. 91a cmt. 2013 ("Rule 91a is a new rule implementing section 22.004(g) of the Texas Government Code, which was added in 2011 and calls for rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence."). Also enacted by the 2011 Texas Legislature was the TCPA. The TCPA also provided a "procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of" rights under the First Amendment. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). It makes no sense that the 2011 Legislature would direct the supreme court to adopt rule 91a in an effort to expedite the dismissal of causes of action that have no basis in law or fact, and at the same time would intend to permit a litigant to file a TCPA motion to dismiss in response to a motion to dismiss filed under rule 91a. In essence, Juliette's proposed interpretation of "legal action" allows her to circumvent her obligation of responding to the rule 91a motion to dismiss simply by filing her own motion to dismiss pursuant to the TCPA. Such an interpretation leads to absurd results. *See Youngkin*, 546 S.W.3d at 680; *see also In re Estate of Check*, 438 S.W.3d 829, (Tex. App.—San Antonio 2014, no pet.) (holding that even though plain language of section 27.003(b) of the TCPA, coupled with the definition of "legal action," might seem to support an argument that an amended counterclaim was a "legal action" for the purposes of the TCPA's

expedited dismissal procedure, such an interpretation would lead to an absurd result not intended by the Legislature).

Moreover, in looking at the plain meaning of "legal action" as used in section 27.001(6), we note that the catch-all provision for "legal action" follows a list of other covered "legal actions": "a lawsuit, cause of action, petition, complaint, cross-claim, or counter-claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.0001(6). When the more specific items (like "lawsuit" and "cause of action") are "followed by a catch-all 'other,'" "the doctrine of *ejusdem generis* teaches that the latter must be limited to things like the former." *Paulsen v. Yarrell*, 537 S.W.3d 224, 233 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (emphasis in original). That is, "when 'general words follow an enumeration of two or more things, they apply only to . . . things of the same general kind or class specifically mentioned.'" *Id*. (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012)) (alteration in original). "For these purposes the enumeration of 'lawsuit,' 'cause of action,' 'petition,' 'complaint,' 'cross-claim,' and 'counterclaim,' is best characterized by the observation that each element of this class is a procedural vehicle for the vindication of a legal claim, in a sense that is not true for a motion to dismiss." *Id*. "Were we to conclude otherwise, the proliferation of 'piecemeal or seriatim "motions to dismiss" attacking myriad "legal actions" that consist merely of individual filings within or related to a lawsuit, as opposed to the underlying lawsuit and substantive claims that are the [TCPA]'s core focus' would result in application of the TCPA that 'strays from—and, indeed, undermines through cost and delay—its manifest purpose to secure quick and inexpensive dismissal of meritless "legal actions" that threaten expressive freedoms.'" *Id*. (quoting *In re Elliot*, 504 S.W.3d 455, 480 (Tex. App.—Austin 2016, orig. proceeding) (Pemberton, J., concurring)). We therefore conclude that Mauricette and Dorothy's motion to dismiss pursuant to rule 91a is not a "legal action" for purposes of the TCPA.

**MOTION TO DISMISS FRIVOLOUS APPEAL WITH SANCTIONS**

As part of their appellees' brief, Mauricette and Dorothy have filed a motion to dismiss this appeal as frivolous and a request for sanctions against Juliette. Texas Rule of Appellate Procedure 45 provides that if a court of appeals determines an appeal is frivolous, it *may* award a prevailing party just damages. TEX. R. CIV. P. 45. "Whether to grant sanctions for a frivolous appeal is a matter of discretion that this court exercises with prudence and caution, and only after careful deliberation in truly egregious circumstances." *In re Willa Peters Hubberd Testamentary Trust*, 432 S.W.3d 358, 369 (Tex. App.—San Antonio 2014, no pet.) (citation omitted). In determining whether an appeal is frivolous, we consider "the record, briefs, and other papers filed in this court." *Gard v. Bandera Cty. Appraisal Dist.*, 293 S.W.3d 613, 619 (Tex. App.—San Antonio 2009, no pet.). "If [the] appellant's argument on appeal fails to convince us but has a reasonable basis in law and constitutes an informed, good-faith challenge to the trial court's judgment [or order], sanctions are not appropriate." *Id.*

Mauricette and Dorothy argue that Juliette's subject-matter jurisdiction argument was brought in bad faith because this court and the supreme court had previously denied petitions for writ of mandamus she had filed on the issue. *See In re Guardianship of Fairley*, No. 18-0579 (Tex. Jan. 11, 2019) (orig. proceeding); *In re Guardianship of Fairley*, No. 04-18-00190-CV, 2018 WL 1610924 (Tex. App.—San Antonio Apr. 4, 2018, orig. proceeding [mand. denied]). They stress that relitigating issues already decided can be a basis for sanctions. *See Glassman v. Goodfriend*, 522 S.W.3d 669, 675 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 299 (Tex. App.—Houston [14th Dist.] 2002, no pet.). However, the opinion from this court regarding Juliette's petition for writ of mandamus states that her petition was denied because she failed to provide a sufficient record. *See Guardianship of Fairley*, 2018 WL 1610924, at *1. Further, the supreme court denied Juliette's petition for writ of mandamus by simply stating

"denied" and did not give its reasons. *See In re Guardianship of Fairley*, No. 18-0579 (Tex. Jan. 11, 2019) (orig. proceeding). Therefore, we cannot conclude that Juliette's issue had already been decided on its merits.

Similarly, Mauricette and Dorothy argue that Juliette's TCPA issue had no basis in law. However, given the expansive reading appellate courts have given issues relating to interpretation of the TCPA, we cannot conclude that her issue had no basis in law. We thus deny the motion to dismiss frivolous appeal with sanctions.

## CONCLUSION

Because we conclude the probate court has subject-matter jurisdiction over the underlying proceedings and because we hold probate court did not err in denying Juliette's motion to dismiss pursuant to the TCPA, we affirm the order of the probate court.

Liza A. Rodriguez, Justice