**Affirmed and Opinion Filed December 1, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-19-01013-CV
_____

## LUXOTTICA OF AMERICA INC. F/K/A LUXOTTICA RETAIL NORTH AMERICA INC. AND EYEMED VISION CARE LLC, GUTMAN VISION, INC., ALEX GUTMAN, AND MILANA GUTMAN, Appellants
## V.
## JEFFREY GRAY, DAWN GRAY AND BRAVE OPTICAL, INC., Appellees

### On Appeal from the 101st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-17-07929

## MEMORANDUM OPINION
Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Partida-Kipness

In this interlocutory appeal, appellants contend the trial court erred in denying their motions to dismiss. Appellees sued appellants for multiple claims, including conspiracy to commit fraud by failing to disclose certain facts regarding the operation of two franchise optical stores during store-purchase negotiations. Appellants moved to dismiss appellees' claims on the grounds that the allegedly conspiratorial communications at issue implicated appellants' rights under the Texas

Citizens Participation Act (TCPA). The trial court did not rule on the motions, which were denied by operation of law. We affirm denial of the motions.

## BACKGROUND

In 2015, Gutman Vision, Inc., which is owned by Alex and Milana Gutman (the Gutmans) (collectively, Gutman Appellants), operated two Pearle Vision optical stores, known by the parties as Preston 8655 and Plano Pkwy 8683, in Plano, Texas. Luxottica of America Inc. is the Pearle Vision franchisor and prior owner of the stores. EyeMed Vision Care LLC, which is owned by Luxottica, is an administrator of vision insurance benefits. As a Luxottica franchisee, Gutman Vision was required under its franchise agreement to operate as an approved EyeMed provider.

Gutman Vision advertised the stores for sale, and Jeffrey and Dawn Gray (the Grays), owners of Brave Optical, Inc. (collectively, Gray Appellees), inquired in July 2015 about purchasing the stores. Initial negotiations fell through, but Gutman Vision reopened negotiations by contacting the Grays in November 2015. The Grays made a revised offer to purchase the stores' assets in December 2015. Among the conditions for payment, the Grays listed: "No material changes," "Businesses are operating in similar fashion as in 2014," and "Plano Parkway location is contributing positively to cash flow."

In January 2016, the Grays met with Luxottica representatives, including John Womack, who was Luxottica's "business consultant" for all Pearle Vision stores in Plano. The Grays allege that Womack "repeatedly affirmed the financial

–2–

performance of the Gutman Appellants' Pearle Vision stores and represented that they were some of the most profitable stores in the country." He also said the stores were cash-flow positive and had no significant deficiencies. The parties entered into an Assignment and Assumption of License Agreement on June 28, 2016. Brave Optical, prospective owner of the stores, also entered into an Intercreditor Agreement with Luxottica on June 30, 2016. The sale closed on July 12, 2016.

The Grays allege they learned about significant issues with the stores after closing. According to the Grays, one of the stores was among the three worst performing stores in the region, contrary to Womack's statements. The Grays also alleged that Gutman Vision breached the purchase agreement by failing to transfer all assets listed in the agreement and giving store employees raises on the eve of closing. In addition, the Grays discovered that Gutman Vision's sales revenue was allegedly "misrepresented, inflated and fraudulent" and that "over 80% of the inventory was obsolete, discontinued, non-approved, or impaired."

On August 2, 2016, the optometrist subleasing space in the Plano Pkwy 8683 store notified the Grays that she was leaving to take another job. She claimed that she had waited four months for EyeMed credentials, did not know why EyeMed had delayed, and could not make a living without credentials. The Grays allege further that employees described Gutman Vision's fraudulent practices regarding insurance claims and "providing inferior products to customers who had paid for superior products." The Grays were unaware until after closing that EyeMed had terminated

its contract with Gutman Vision in May 2016 due to fraudulent billing practices. According to the Grays, this termination "would have effectively put [Gutman Vision] out of business had the [sale] transaction not occurred." The Grays learned in September 2016 that Gutman Vision had paid a large fine to EyeMed for fraudulent claims.

The Gray Appellees sued the Gutman Appellants on July 5, 2017, alleging DTPA violations, breach of contract, fraud, negligent misrepresentation, unfair competition, and conspiracy. The Gutman Appellants answered and moved for leave to designate Luxottica and EyeMed (collectively, Luxottica Appellants) as responsible third parties. The trial court granted the motion.

Based on evidence obtained in discovery, the Gray Appellees filed their third amended original petition, which included new claims against both the Gutman Appellants and Luxottica Appellants. The Gray Appellees' amended petition describes how EyeMed was notified of a complaint in December 2015 that Gutman Vision was "up-charging a customer's account for contact lenses." The petition details communications between EyeMed and Luxottica regarding the investigation into the complaint, noting that one such communication characterized some Gutman Vision insurance claims as containing "pretty egregious up-charging on several plans and line items." Consequently, EyeMed audited Gutman Vision's stores. According to the Gray Appellees, the audit report indicated that Gutman Vision failed to properly maintain records and gave Gutman Vision a "failing grade."

EyeMed's Special Investigations Committee (SIC) then decided to terminate Gutman Vision's contract. EyeMed notified Gutman Vision of this decision in May 2016.

Also in May 2016, Dawn Gray was attending franchisee training at Luxottica's offices in Ohio. While she was there, Luxottica provided her a copy of Gutman Vision's recent financial statements for the Preston 8655 store and informed her that it was one of their most profitable stores. Luxottica, however, did not disclose that EyeMed was terminating its contract with Gutman Vision.

As evidence that Luxottica knew Gutman Vision was being terminated, the Gray Appellees cite May 2016 communications between EyeMed and Luxottica discussing the termination. The communications reflect that David Reiter, Pearle Vision Vice President and Womack's boss, informed Amanda Ng, an EyeMed auditor manager, that the stores were in the process of being transferred to the Grays. Ng responded, "[U]nfortunately, the locations referenced are not eligible for participation on the EyeMed network at this time." The Gray Appellees allege that this information was not disclosed to them.

They also allege the appellants did not disclose the appeal letter Milana Gutman sent to EyeMed. The appeal was referred to EyeMed's Grievance Sub-Committee, who denied the appeal on June 16, 2016, and authorized the recoupment from Gutman Vision of $58,007.32 in fraudulent claims filed from the two stores. Neither EyeMed nor Luxottica informed the Grays of this decision.

As the July 2016 closing date neared, the Grays' banker, Sam Phelps, met with Reiter, who insisted that Gutman Vision was in good standing and reiterated that the stores were "some of the best in the brand." The Gray Appellees allege that their bank funded their SBA loan based on Reiter's oral representations and Luxottica's representations in the Intercreditor Agreement.

Under the terms of the Luxottica License Agreement, Brave Optical was required to become an EyeMed provider. Yet, EyeMed had just terminated the Gutman Vision contract on the stores the Gray Appellees were about to purchase and Brave Optical was about to operate. Concerned about this apparent conflict, Luxottica general manager Alexander Wilkes asked Ng to "just send this [EyeMed's recoupment] to collection against the old owners [the Gutman Appellants]." Ng refused, noting, "EyeMed's policy is that locations that commit fraud are removed from the EyeMed network for a year." As evidence of EyeMed's policy, Ng provided Wilkes a copy of EyeMed's Ownership Transfer Reinstatement Criteria. These criteria mandated that a purchasing party be made aware of the involuntary termination of the selling party's contract and the conditions for reinstatement. Neither EyeMed nor Luxottica disclosed this information to the Gray Appellees, and the Gray Appellees allege they did not discover it until after they filed this lawsuit.

The Gray Appellees cite additional internal Luxottica communications and Reiter's deposition testimony to show that Reiter "knew about the Gutman [Appellants'] termination for fraud and that Luxottica had made the decision to 'not

get in the middle of the transaction.'" The Gray Appellees allege that Reiter had a duty to disclose Gutman Vision's termination yet did not and warranted in the Intercreditor Agreement that there had been "no material defaults . . . under the franchise agreement." The Gray Appellees allege further that the Gutman Appellants "remained silent about the transaction, even denying (after this action was commenced) that it had occurred," and "the failure of the [Luxottica Appellants] to disclose the Gutman [Appellants'] fraud and termination from EyeMed when they likewise had a duty to do so, made them as culpable as the Gutman [Appellants] in the Gutman [Appellants'] fraud."

The Gray Appellees allege that the Gutman Appellants "settled up with Luxottica and EyeMed" simultaneously with the closing on the Grays' purchase of Gutman Vision's stores. Specifically, Gutman Vision paid "$18,118.18 for Plano Pkwy 8683, which included $16,019.95 collected by Luxottica on behalf of EyeMed, and $60,595.37 for Preston 8655, which likewise included $41,987.37 on behalf of EyeMed for the Fraudulent Recoupment."

On July 17, 2016, five days after closing, Jeffrey Gray sent an email to Reiter and other Luxottica employees identifying "some of the irregularities discovered immediately after closing," noting, "part of it also appears to be an attempt to hide information which could reveal fraudulent activities." Luxottica corporate trainer Michelle Templeton contacted the Gray Appellees who complained of "customer problems," "obsolete inventory," and a "lack of invoices for frames." Templeton

informed Reiter that Jeffrey Gray had indicated the resident optometrist had received a termination notice but was told the Gutman Appellants had "taken care of it." Reiter did not address the issue but told Templeton to "call me." The Gray Appellees treated this as Luxottica Appellants' attempt to "actively conceal" Gutman Vision's fraud.

Thus, the Gray Appellees alleged that the Luxottica Appellants assisted, encouraged, participated with, or conspired with the Gutman Appellants in committing fraud. They brought claims in their third amended original petition for negligent misrepresentation, fraud by nondisclosure, statutory fraud, and participation in a conspiracy to commit fraud by failing to disclose that EyeMed had terminated its contract with Gutman Vision due to Gutman Vision's fraudulent billing practices. The Gray Appellees also alleged that Gutman Vision's corporate form was a sham to perpetrate a fraud and sought to hold the Gutmans personally liable for the alleged fraud.

The Luxottica Appellants and Gutman Appellants each moved to dismiss the Gray Appellees' claims under the TCPA. According to appellants, all of the Gray Appellees' claims concern communications implicating appellants' rights of free speech or association. The trial court heard argument on the motions but did not issue an order. Appellants filed notices of appeal after the trial court's deadline to rule expired. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(a).

**STANDARD OF REVIEW**

The TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them for exercising their rights in connection with matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see generally* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.[1] The stated purpose of the statute is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

To accomplish this purpose, the statute provides a procedure to expedite dismissing claims brought to intimidate or to silence a defendant's exercise of a protected right. *Coleman*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. &

---

[1] The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law. Serv. 684, 687. This lawsuit was filed on July 5, 2017. Thus, the law in effect before September 1, 2020, applies. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500. All citations to the TCPA are to the version before the 2019 amendments took effect.

REM. CODE § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Elliott*, 564 S.W.3d at 847.

If, as here, the trial court fails to rule on a motion to dismiss within thirty days of the hearing on the motion, the motion is denied by operation of law. TEX. CIV. PRAC. & REM. CODE §§ 27.005(a), 27.008(a). We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). "In conducting this review, we consider, in the light most favorable to the nonmovant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Dyer*, 573 S.W.3d at 424; *see also* TEX. CIV. PRAC. & REM. CODE § 27.006(a). However, the plaintiff's petition is generally "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

## ANALYSIS

In their sole issue, the Luxottica Appellants contend that the trial court erred in denying their motion to dismiss by operation of law because the Gray Appellees' claims are based on, related to, or in response to Luxottica Appellants' exercise of

–10–

the right of association or the right of free speech. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b). In their first issue, the Gutman Appellants likewise contend that the trial court erred because the Gray Appellees' claims implicate the Gutman Appellants' right of free speech.[2] In their second issue, the Gutman Appellants contend their motion to dismiss was timely because it was limited to the newly pleaded claims in the Gray Appellees' third amended original petition. We address this threshold issue before addressing appellants' remaining issues.

## A.     Timeliness of the Gutman Appellants' Motion to Dismiss

The Gray Appellees filed their original petition on July 5, 2017. Gutman Appellants filed their motion to dismiss on May 14, 2019, nearly two years later. The Gray Appellees argue that the Gutman Appellants' motion was untimely because it was filed after the TCPA's sixty-day deadline. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(b). The Gutman Appellants contend, however, that their motion was timely because it was filed within sixty days after the Gray Appellees filed their third amended original petition. According to the Gutman Appellants, the amended petition included new factual allegations, parties, and claims. Specifically, it included a new claim of conspiracy to commit fraud alleged against both the

---

[2] The Gutman Appellants incorporated into their supplemental motion to dismiss a claim that the Gray Appellees' lawsuit implicated their right of association. They did so by reference to argument made in Luxottica Appellants' motion to dismiss. On appeal, however, they do not raise an issue regarding the trial court's denial of their motion on this ground. Thus, Gutman Appellants have waived this issue on appeal. *See* TEX. R. APP. P. 38.1(f), (i) (appellant's brief "must state concisely all issues or points presented for review" and "must contain a clear and concise argument for the contentions made, with appropriate citation to authorities and to the record").

Gutman Appellants and the newly named Luxottica Appellants. Consequently, the amended petition reset the deadline for filing a motion to dismiss under the TCPA. We agree.

A motion to dismiss under the TCPA must be filed within sixty days of the date of service of the legal action. TEX. CIV. PRAC. & REM. CODE § 27.003(b). A movant forfeits the TCPA's early-dismissal protections if the motion is not filed timely. *Mancilla v. Taxfree Shopping, Ltd*, No. 05-18-00136-CV, 2018 WL 6850951, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.); *In re Estate of Check*, 438 S.W.3d 829, 837 (Tex. App.—San Antonio 2014, no pet.). An amended petition asserting claims based upon new factual allegations may reset a TCPA deadline as to the newly added substance. *Mancilla*, 2018 WL 6850951, at *3; *Jordan v. Hall*, 510 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.). However, an amended petition that merely adds details to prior alleged facts does not restart the clock if the same essential factual allegations supporting the claim were present in an earlier petition. *Mancilla*, 2018 WL 6850951, at *3. In other words, filing an amended petition that does not alter the essential nature of an action does not reset the deadline. *See, e.g.*, *Miller Weisbrod, LLP v. Llamas-Soforo*, 511 S.W.3d 181, 193 (Tex. App.—El Paso 2014, no pet.) (deadline to file motion to dismiss triggered by filing and service of first pleading naming defendant and giving notice of claims, not subsequent amended petition); *Jordan*, 510 S.W.3d at 198–99 (deadline not reset by filing of supplemental petition when factual allegation underlying both original

–12–

petition and supplemental petition was purported illegal placement of radio advertisement); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 530 (Tex. App.—Corpus Christi 2015, no pet.) (deadline to file motion to dismiss triggered by original petition asserting claims, not amended petition that retained claims).

The Gray Appellees' original petition included a claim against the Gutman Appellants for "Conspiracy." Although the original petition mentioned Luxottica and EyeMed in its factual allegations, it named only the Gutman Appellants as defendants. Thus, its conspiracy claim concerned only the actions of the Gutmans and Gutman Vision.

The Gray Appellees' third amended original petition, however, added the Luxottica Appellants as named parties, alleged new facts regarding the Luxottica Appellants' actions, and enhanced their claims to include claims brought against the defendants jointly and individually. In particular, the Gray Appellants added a "Conspiracy to Commit Fraud" claim against all defendants. Unlike its original "Conspiracy" claim, the new claim alleged actions involving both the Gutman Appellants and the Luxottica Appellants. Specifically, it alleged "[t]he [Luxottica Appellants] and the Gutman [Appellants] were a combination of two or more persons," and "[t]he [Luxottica Appellants] had a meeting of the minds with the Gutman [Appellants] on the object or course of action." The Gutman Appellants specifically moved to dismiss this claim by name.

On the record before us, we conclude the Gray Appellants' third amended original petition reset the deadline for filing a motion to dismiss under the TCPA by altering the essential nature of the conspiracy action. *See Jordan*, 510 S.W.3d at 199. Consequently, the Gutman Appellants' motion to dismiss was filed timely, and we sustain Gutman Appellants' second issue.

## B.      Applicability of the TCPA

As the movants, appellants were required to show by a preponderance of the evidence that the TCPA applies to the Gray Appellees' legal action. TEX. CIV. PRAC. & REM. CODE § 27.003(a); *Dyer*, 573 S.W.3d at 425. Appellants contend they met this burden by establishing the Gray Appellees' conspiracy claims are based on, related to, or in response to appellants' exercise of their right of free speech or right of association. Each of these protected rights requires a "communication" as defined by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2)–(4). The parties do not contest whether the communications at issue qualify as such under the TCPA. *See id*. § 27.001(1) (defining "communication" to include "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic"). Thus, the threshold question is whether appellants met their burden to show that the TCPA applies to the Gray Appellees' claims. *See Dyer*, 573 S.W.3d at 425.

Appellants cite the same communications in support of their arguments on all issues. Specifically, the Gutman Appellants contend the communications cited in

the Gray Appellees' third amended original petition include communications between the appellants addressing matters of public concern, namely insurance coverage and fraud. These communications include:

- A Luxottica webinar discussing how to avoid fraud when filing insurance claims with EyeMed;
- Verbal and written communication regarding EyeMed's audit of Gutman Vision's stores;
- EyeMed's contract termination notice to Gutman Vision;
- Gutman Vision's contract termination appeal;
- EyeMed's "Ownership Transfer Criteria"; and
- Phone calls between Gutman Vision and EyeMed regarding the contract termination.

The Gutman Appellants contend these communications implicate their right of free speech. Luxottica Appellants likewise contend the communications cited by the Gray Appellees concern the EyeMed audit, which was conducted in response to claims that Gutman Vision was submitting fraudulent insurance claims. In addition to those communication cited by the Gutman Appellants, the Luxottica Appellants also cite:

- EyeMed's SIC communications;
- EyeMed's audit report;
- Email communications between Luxottica and EyeMed regarding the Gutman Vision contract termination and the pending sale to the Grays;
- Luxottica's oral communications with the Grays' banker regarding stability of Gutman Vision's stores; and
- Internal Luxottica communications regarding plans to recoup fraudulent claims from Gutman Vision at closing with the Grays.

The Luxottica Appellants contend these communications implicate both their right of free speech and right of association.

### 1. Right of Free Speech

As defined by the TCPA, the "exercise of the right of free speech" is a communication made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE § 27.001(3); *Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 276 (Tex. App.—Dallas 2019, pet. denied). A "matter of public concern" includes issues related to health or safety; economic, or community well-being; or a good, product, or service in the marketplace. TEX. CIV. PRAC. & REM. CODE § 27.001(7). Appellants contend their communications concern a matter of public concern, specifically the EyeMed audit, insurance coverage, and insurance fraud. Thus, appellants argue they met their burden of establishing the TCPA applies to Gray Appellees' claims because the communications concern "health or safety" and the provision of "a good, product, or service in the marketplace."

Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech under the TCPA. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). The communications need not specifically "mention" a matter of public concern or have more than a "tangential relationship" to such a matter. *Coleman*, 512 S.W.3d at 900. As long as the movant's statements are "in connection with" "an issue related to" any of the matters of public concern listed in the statute, the TCPA applies. *Id.*

The communications cited by appellants concern insurance fraud prevention, EyeMed's fraud investigation, termination of the Gutman Vision contract, and recoupment of fraudulent overcharges. However, "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019). "A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id.* Likewise, "[a] private communication made in connection with a business dispute is not a matter of public concern under the TCPA." *Erdner*, 680 S.W.3d at 276.

Regardless, we need not decide whether appellants' cited communications involve a matter of public concern because the Gray Appellees' petition makes clear these are not the communications on which their conspiracy claim is based.[3] Rather, the Gray Appellees' conspiracy claim rests on other communications and appellants' silence despite their knowledge that EyeMed had terminated the Gutman Vision contract. Silence is not a protected "communication" under the TCPA. *See Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 284 (Tex. App.—Dallas 2019,

---

[3] On appeal, the Gutman Appellants also contend the trial court erred in denying their motion to dismiss the Gray Appellees' "claim for piercing the corporate veil." The Gutman Appellants entire argument on this point consists of the contention that this claim "depends on the same newly-alleged [sic] frauds as the conspiracy-to-commit[-]fraud claim," that the Gray Appellees alleged that the Gutmans' "use of Gutman Vision was injurious to 'public interests—all as alleged below,'" and that "all of the allegations that followed . . . related to matters of public concern." The Gutman Appellants offer no argument and cite no authority to demonstrate how the TCPA applies to this claim. *See* TEX. R. APP. P. 38.1(i). Consequently, the Gutman Appellants have waived this issue on appeal.

–17–

pet. denied) ("[C]onstruing the definition of 'communications' to include non-communications would lead to an absurd result as nothing would be outside the scope of the TCPA.").

We addressed a similar pattern of allegations in *Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-00874-CV, 2019 WL 3059884, at *1–2 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.). There, Hallmark accused former employee Damonte of misappropriating Hallmark's confidential information and conspiring with other employees in a scheme to damage and compete with Hallmark. *Id.* at *2. Hallmark based it allegations on changes in Damonte's behavior around the time of his resignation and emails sent by employees close to Damonte. *Id.* The emails were sent from the employees' work addresses to their personal addresses (i.e., they sent the emails to themselves) and contained Hallmark's confidential information. *Id.* Damonte filed a motion to dismiss Hallmark's claims under the TCPA, contending Hallmark's claims implicated Damonte's rights of association and free speech because Hallmark's claims arose from communications between the employees concerning complaints about mistreatment, poor compensation, and the company's strategic direction. *Id.*

On appeal from the trial court's denial of his motion to dismiss, Damonte attempted to distinguish his case from *Dyer* by arguing that he had denied any conspiracy and the only conversations he had with his co-workers concerned their complaints about Hallmark. *Id.* at *4. According to Damonte, the communications

–18–

about workplace complaints were made in connection with "a good, product, or service in the marketplace" and were the actual basis of Hallmark's claims. *Id.* We found, however, that "nothing in Hallmark's lawsuit suggests its claims are predicated on anything other than Damonte's alleged involvement in a scheme to misappropriate and use Hallmark's confidential information." *Id.* at *5. Consequently, we concluded that "[t]he allegations against Damonte clearly are not based on, related to, or in response to conversations Damonte purportedly had with employees about problems they were having with the company." *Id.* (citing *Hersh*, 526 S.W.3d at 467 ("The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations.")).

Appellants here contend, just as Damonte did, that the claims at issue are based on communications implicating the right of free speech. However, the communications cited by appellants in both cases are ancillary to the conspiracy claims at issue and merely demonstrate the appellants' knowledge of the underlying tortious activity. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (civil conspiracy requires an underlying intentional tort). In both cases, appellees conspiracy claims arose from suspicious actions taken by appellants around the time of the alleged tortious activity, not from these ancillary communications. In *Damonte*, it was Damonte's change of behavior coupled with employee emails containing confidential information that gave rise to Hallmark's claims. *Damonte*, 2019 WL 3059884, at *1–2. Here, it was appellants' alleged

failure to disclose or withholding of information regarding Gutman Vision's contract termination, despite knowing the Grays were in the process of purchasing Gutman Vision's stores. Indeed, some alleged communications show Luxottica mispresenting Gutman Vision's good standing with Luxottica at the exact same time EyeMed was terminating the Gutman Vision contract. Appellants do not argue that these communications fall within the TCPA's protection. Nor could they. The communications do not involve public or citizen's participation, and it would be absurd to apply the TCPA to them. *See Dyer*, 573 S.W.3d at 428. Consequently, we conclude appellants failed to establish that the Gray Appellees' claims are based on, related to, or in response to their exercise of the right of free speech, as defined by the TCPA. *See Krasnicki*, 583 S.W.3d at 284.

### 2. Right of Association

The TCPA broadly defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." TEX. CIV. PRAC. & REM. CODE § 27.001(2); *Erdner*, 580 S.W.3d at 275; *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 574 (Tex. App.—Fort Worth 2019, pet. denied). "[T]o 'constitute an exercise of the right of association under the [TCPA], the nature of the communication between individuals who join together must involve public or citizen's participation.'" *Dyer*, 573 S.W.3d 426 (quoting *ExxonMobil Pipeline Co. v.*

*Coleman*, 464 S.W.3d 841, 847 (Tex. App.—Dallas 2015), *rev'd on other grounds*, 512 S.W.3d at 900–01 (Tex. 2017)); *see also Erdner*, 580 S.W.3d at 275.

The Luxottica Appellants contend they met their burden of establishing the TCPA applies to the Gray Appellees' claims because the communications at issue "centered on auditing the Stores to determine the veracity of that customer's complaint and to ensure that other customers were being properly charged." The Luxottica Appellants contend that, after receiving a customer complaint, "Luxottica and EyeMed then joined together to defend the common interest that customers not be 'up-charged' for products sold at the [Gutman Vision] Stores."

Luxottica Appellants, however, cite the same communications in support of their association argument as those cited in support of their free-speech argument. As previously discussed, these communications do not form the basis of the Gray Appellee's claims, and the communications and actions alleged in support of their claims do not fall within the TCPA's protection. *See Dyer*, 573 S.W.3d at 426–27. Consequently, Luxottica Appellants failed to establish that the Gray Appellees' claims are based on, related to, or in response to their exercise of the right of association, as defined by the TCPA. *Id.*

Having concluded that the Gray Appellees' claims do not implicate appellants' rights under the TCPA, we overrule the Gutman Appellants' first issue and the Luxottica Appellants' sole issue.

**CONCLUSION**

Because appellants failed to satisfy their initial burden of establishing by a preponderance of the evidence that the TCPA applies to appellees' claims, we affirm the denial of appellants' motions to dismiss by operation of law.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

191013F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LUXOTTICA OF AMERICA INC.
F/K/A LUXOTTICA RETAIL
NORTH AMERICA INC. AND
EYEMED VISION CARE LLC,
GUTMAN VISION, INC., ALEX
GUTMAN, AND MILANA
GUTMAN, Appellants

No. 05-19-01013-CV        V.

JEFFREY GRAY, DAWN GRAY
AND BRAVE OPTICAL, INC.,
Appellees

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-07929.
Opinion delivered by Justice Partida-
Kipness. Justices Schenck and
Osborne participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees JEFFREY GRAY, DAWN GRAY AND BRAVE OPTICAL, INC. recover their costs of this appeal from appellants LUXOTTICA OF AMERICA INC. F/K/A LUXOTTICA RETAIL NORTH AMERICA INC. AND EYEMED VISION CARE LLC, GUTMAN VISION, INC., ALEX GUTMAN, AND MILANA GUTMAN.

Judgment entered this 1st day of December, 2020.